FRANKLIN v. SCURLOCK, COMMISSIONER OF REVENUES.

5-518                                 272 S. W. 2d 62

Opinion delivered November 1, 1954.

*George F. Edwards* and *George W. Shepherd,* for appellant.

*O. T. Ward,* for appellee.

ROBINSON, J. The issue here is the constitutionality of Act 347 of 1953, known as the Motor Vehicle Safety Responsibility Act. Sec. 25(c) provides: "The department within 50 days after receipt of report of any accident referred to herein and upon determining the amount of security to be required of any person involved in such accident or to be required of the owner of any vehicle involved in such accident shall give written notice to every such person of the amount of security required to be deposited by him and that an order of suspension will be made as hereinafter provided upon the expiration of 10 days after the sending of such notice unless within said time security be deposited as required by said notice."

Sec. 24 provides that the Act applies to the driver or owner of any vehicle of a type subject to registration under the motor vehicle laws of the state which is in any manner involved in an accident in this state, which acci-

dent has resulted in personal injury or property damage to any person in excess of $100. Sec. 29 provides for suspension of driver's license and registration of vehicles.

Appellants Franklin and Simons were each involved in accidents while driving their automobiles. In due time the Commissioner of Revenues received notice of the accidents and the amount of the damage claimed to have been sustained by the other parties involved, which is in excess of $100 each. The Commissioner, acting pursuant to the provisions of Act 347, gave each appellant notice to furnish security in the amount of damages indicated or to appear before the Commissioner and show that they came within the exceptions to the Act requiring security. Neither appellant furnished the security or appeared before the Commissioner. The Commissioner therefore issued an order suspending their drivers' licenses and the registration of their automobiles.

The appellants took an appeal to the Pulaski Circuit Court. There both appellants testified that they were in no way to blame for the accidents which had occurred. Notwithstanding this testimony, the Circuit Court affirmed the action of the Commissioner. On appeal to this court, appellants contend that the Act is unconstitutional since it authorizes the cancellation of their licenses without any showing that the collisions were due to some negligence or carelessness on their part.

The hearing in Circuit Court was an *ex parte* proceeding insofar as it pertained to negligence on the part of the appellants contributing to cause the accidents, and the uncontradicted evidence at that hearing showed the appellants to be guilty of no negligence. If the order of the Commissioner suspending the licenses could be set aside merely by showing that the operators of the automobiles were not negligent, the Act would be nullified because the issue as to negligence would come before the Commissioner only in those cases where the automobile owner or operator has no liability insurance; and the fact that he is without insurance would strongly indicate

that he is judgment-proof. Hence no one would be interested in procuring and presenting to the Commissioner or the court evidence showing the liability of the operator of the automobile, and the Act would have no practical effect whatsoever.

Appellants rely on the case of *State* v. *Kouni*, 58 Idaho 493, 76 P. 2d 917. There the Idaho court held that a driver's responsibility law which did not provide for an appeal but authorized the Commissioner to revoke the license in a summary manner was unconstitutional. There is a strong dissenting opinion in that case which is in line with the great majority of cases throughout this country. Furthermore it appears that the majority opinion in the Idaho case was based on the fact that the Idaho law provides for no appeal from an arbitrary finding of the Commissioner as to the propriety of revoking the license. In that particular case the Commissioner revoked the driver's license after there had been an adversary proceeding in a court of competent jurisdiction, and there had been a jury verdict in favor of the driver of the motor vehicle in question. Our statute provides for an appeal from the action of the Commissioner (Sec. 16); and Sec. 31 provides that a person shall be relieved from the requirement of depositing security where he has been finally adjudicated not to be liable for damages. The Idaho statute makes no provision for an appeal and no provision that the driver be relieved from the burden of furnishing security in the event he is found to be not liable for damages in a court of competent jurisdiction.

Some kind of a driver's responsibility law is in force in practically all of the states, and Idaho is the only state having had occasion to pass on the validity of the act which has held such an act to be unconstitutional. See annotation 35 A. L. R. 2d 1011.

The Supreme Court of the United States in *Reitz* v. *Mealey*, 314 U. S. 33, 62 S. Ct. 24, 86 L. Ed. 21, upheld the constitutionality of a driver's responsibility law. There the court said: "The statute, leaving out of consideration the amendments [the amendments are not pertinent

to the issue involved here], is not obnoxious to the due process clause of the 14th Amendment. The use of the public highways by motor vehicles, with its consequent dangers, renders the reasonableness and necessity of regulation apparent. The universal practice is to register ownership of automobiles and to license their drivers. Any appropriate means adopted by the states to insure competence and care on the part of its licensees and to protect others using the highway is consonant with due process. Some states require insurance, or its equivalent, as a condition of the issue of a license.''

The Wisconsin statute is substantially the same as ours, although not as explicit in providing for the right of appeal. In the case of *State* v. *Stehlek,* 262 Wis. 642, 56 N. W. 2d 514, the Wisconsin court went into the matter thoroughly and mentioned the fact that of all the states in the Union, only Idaho had held a similar act to be unconstitutional. The court further pointed out that the great weight of authority is that the right to drive an automobile is a privilege to be granted on such terms as may be provided by law.

*Ballow* v. *Reeves,* Ky., 238 S. W. 2d 141, is directly in point. There the Kentucky court mentioned that the legislature could even require as a condition to the right to operate an automobile the procurement of insurance. Citing In re Opinion of the Justices 251 Mass. 569, 147 N. E. 681. The court said: ''If the legislature may require proof of financial responsibility in advance of the issuance of a license, there seems to be no valid reason why it could not require the same thing of an operator who had been involved in an accident, as the condition upon which he will be permitted to retain his license.''

In upholding the California statute requiring all insurers transacting liability insurance in the state to participate in a plan for the equitable apportionment among them of those applicants for automobile liability insurance who are in good faith entitled to such insurance, the Supreme Court of the United States in *California Auto Assn.* v. *Maloney,* 341 U. S. 105, 71 S. Ct. 601, 95

L. Ed. 788, said: "Highway accidents with their train of property and personal injuries are notoriously important problems in every community. Clearing the highways of irresponsible drivers, devising ways and means for making sure that compensation is awarded the innocent victims, and yet managing a scheme which leaves the highways open for the livelihood of the deserving are problems that have taxed the ingenuity of law makers and administrators."

Our legislature has named the conditions under which the privilege of operating an automobile may be exercised. The appellants in the case at bar simply have not complied with those conditions. The provisions of the Act in issue here violate no provision of the Constitution of the State of Arkansas or of the United States.

In conclusion we call attention to the fact that the supersedeas bond made in this case only covered the matter of costs. The bond should have been for an amount required by the Commissioner as security in addition to the costs.

Affirmed.

Justice WARD dissents.

WARD, J. In differing with the majority I want to make it clear that I do not do so on the ground that Act 347 is unconstitutional, even as the Act is interpreted by them. Their interpretation is: The Commissioner has the absolute and uncontrolled power to revoke the license of a driver of an automobile who is involved in a wreck and who is judgment proof, and that the question of the driver's negligence is immaterial. I agree with the majority to this extent: The Commissioner has the power and duty to make the initial revocation upon information of the accident without any duty to inquire as to who was negligent. The majority holds that the initial finding by the Commissioner is final, as regards negligence, and that the driver has no right of appeal to the circuit court on the question of his negligence. I cannot agree with this latter view.

It is my construction of Act 347, after carefully reviewing all its provisions, that Section 16 gives the driver the right to be heard on the question of negligence (as well as other questions that might be raised). Said section reads as follows:

"Court review. Any order or act of the commissioner under the provisions of this act shall be subject to review by appeal to the circuit court of Pulaski County at the instance of any party in interest. The court shall determine whether the filing of the appeal shall operate as a stay of any such order or act of the commissioner and the court shall summarily hear the matter. The court may, in disposing of the issue before it, modify, affirm or reverse the order or act of the commissioner in whole or in part."

The majority say the hearing in the circuit court in this case was *ex parte* as it pertained to the question of negligence. I agree with this statement if by *ex parte* it is meant that the case was not contested by the Commissioner. However I point out that there is no reason why the hearing should have been *ex parte* or why it was not contested. The Commissioner has at his disposal attorneys and investigators and he could have presented a defense in circuit court if he had so desired, and appellants here should not be penalized because of the Commissioner's failure to act.

The majority opinion says "the uncontradicted evidence at that hearing showed the appellants to be guilty of no negligence" which, of course, under my view, would necessarily call for a reversal of the case.