[S. F. No. 22651.   In Bank.   May 29, 1969.]

VERNE ORR, as Director, etc., et al., Petitioners, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; PETER ALVARADO et al., Real Parties in Interest.

Thomas C. Lynch, Attorney General, and Victor D. Sonenberg, Deputy Attorney General, for Petitioners.

No appearance for Respondent.

Gilbert T. Graham, Norman Nayfach, Peter E. Sitkin, Steven J. Antler, Robert Y. Bell, Sidney M. Wolinsky and Robert F. Spence for Real Parties in Interest.

BURKE, J.—The Department of Motor Vehicles and its director seek prohibition to restrain respondent superior court from taking any further action or proceedings in an action against them in which real parties in interest (the vehicle drivers or operators) pray for judgment declaring portions of the financial responsibility laws (§§ 16080 and 16100 of the Veh. Code[1]) unconstitutional and void in and of themselves and as applied to such drivers, and for restoration of their

---

[1]All section references are to the Vehicle Code unless otherwise stated.

driving privileges and licenses.[2] As will appear we have concluded that the writ should be denied and the lower court authorized to proceed subject to the principles expressed in this opinion.

In the spring of 1967 real parties in interest were uninsured drivers of vehicles which were involved in accidents on California highways. Thereafter the department sent a notice to each such driver to either post security with the department as required by section 16020[3] or risk suspension of driving license and vehicle registration under sections 16080 and 16100. Each driver failed to post the security requested, and accordingly the department ordered that the driver's license and registration of each be suspended.

The drivers then filed a petition for prohibition and mandate with respondent court, asking that the department be directed to set aside the suspension orders.[4] They alleged inter alia that they were not at fault in their respective accidents, that the department had required security deposits from them without regard to the question of their negligence or culpability, that they were without sufficient funds to purchase insurance before the accidents or to post the after-required security, and that without valid drivers' licenses they were deprived of the right to be gainfully employed.

The department answered contending that no determination

[2] Section 16080 provides for the suspension of a driver's license, and section 16100 provides for the suspension of a vehicle registration, for failure of an uninsured motorist to deposit security following certain accidents.

The emphasis in the drivers' prayer for relief before the lower court, and in the respective arguments in this prohibition proceeding, is on the question of restoration of driving privileges and licenses. No consideration has been given to any peculiar circumstances which might affect the validity or application of section 16100. The case is therefore considered as if it involves only section 16080.

[3] Section 16020 (based on former § 420): "Unless the driver involved in an accident described in Section 16000 complies with one of the conditions for exemption specified in Section 16050, the driver shall deposit security in a sum which shall be sufficient in the judgment of the department to satisfy any final judgment or judgments in any amount for bodily injury or in excess of one hundred dollars ($100) for property damage resulting from such accident as may be recovered against such driver or owner subject to the maximum limits required. The department shall determine the amount of security deposit upon the basis of the reports or other evidence submitted to it but shall not require a deposit of security for the benefit of any person when evidence has not been submitted by such person or on his behalf as to the extent of his injuries or the damage to his property within fifty (50) days following the date of the accident."

[4] The petition was actually filed by only two of the drivers; the third was thereafter allowed to intervene by order of court.

of blame or liability was required as a prerequisite to its demand for the posting of security, and that unless the person was specifically exempted by statute (§§ 16050-16057), involvement in an accident was the only criterion to be considered by the department before fixing the amount of security. Each side thereafter moved for summary judgment, which the court denied with the following order: ". . . the matter will be set on the Court's calendar for hearing. If, upon the trial, it appears from the evidence that [the drivers] were without fault as to the accidents . . . , a writ of mandate will issue compelling respondent [department] to restore their licenses." This petition by the department for prohibition followed.

In *Escobelo* v. *State of California* (1950) 35 Cal.2d 870 [222 P.2d 1], the provisions of the financial responsibility laws governing the suspension of a driver's license for failure to post security were upheld by this court against attack on various constitutional grounds, including: (1) Charges that the statute violated the due process provisions of federal and state Constitutions in not providing for hearing before the department or for recourse to the courts before suspension of a license; (2) charges of arbitrary discrimination which denied equal protection and uniform operation of the law in that the posting of security by a driver who might not be culpable was required, before his liability had been judicially determined.

With respect to the due process attack we noted in *Escobedo, supra* (pp. 874-875), that the statute (Stats. 1947, ch. 1235, pp. 2738-2743, adding former §§ 419-420.9 to the Veh. Code; see present §§ 16000-16084) did not expressly provide for a hearing before determination by the department that security must be deposited or the operator's license suspended; that under the statute the licensee was not entitled to a hearing when suspension was mandatory (former § 315, see present §§ 13950-13953 and 14101, subd. (a)); that suspension was mandatory for failure to deposit security "whenever it had been determined that a motor vehicle accident had occurred and damages exceeding $100 ensued which probably might result in 'a judgment or judgments for damages . . . recovered against such operator'" (former § 420; see present § 16020); that the statute in recognition and acceptance of the due process requirement contemplated court review following suspension of a license. (Former § 317; see present § 14400.)

Accordingly, we held in *Escobedo* (pp. 876-877), that suspension of the license without prior hearing but subject to subsequent judicial review did not violate due process if reasonably justified by a compelling public interest, and that such interest appeared from the obvious carelessness and financial irresponsibility of such a substantial number of drivers that "it is apparent that to require a hearing in every case before suspension of a license would have substantially burdened and delayed if not defeated the operation of the law."

With respect to the equal protection and culpability issue *Escobedo* noted (p. 878) that the statute requires security only of those operators involved in an accident against whom, in the opinion of the department, a judgment might be recovered. We held that "Inasmuch as the recovery of a judgment depends, in theory at least, upon culpability, it would seem that the statute, presumptively properly administered, was not open to the objection that under it the nonculpable were subject to arbitrary discrimination." Additionally, in response to charges that the statute invalidly delegated judicial power to the department in failing to provide a sufficient standard to guide it in determining the amount of security to be required, *Escobedo* pointed out (pp. 877-878) that although the Legislature did not provide detailed directions as to the manner in which the department was to reach a "judgment" as to the amount of security required, it did specify as a guide (in former § 420, present § 16020) the probable size of "any [court] judgment" which "may be recovered." Our holding was that "The facts and legal principles governing the recovery of judgments for damages are a matter of public knowledge and provide a reasonable sufficiently certain standard to be followed by the department."

In the present case the vehicle drivers concede before this court that the state can legitimately require security of the uninsured motorist against whom there is a reasonable possibility that a judgment may be recovered by persons injured or otherwise damaged by his negligent driving. This, of course, is the statutory standard we recognized in *Escobedo*. However, the drivers suggest that principles set forth in *Sokol* v. *Public Utilities Com.* (1966) 65 Cal.2d 247 [53 Cal.Rptr. 673, 418 P.2d 265], and in *Endler* v. *Schutzbank* (1968) 68 Cal.2d 162 [65 Cal.Rptr. 297, 436 P.2d 297], require reappraisal of *Escobedo's* approval of the statutory scheme permitting license suspension without prior department hearing. *Sokol* noted the *Escobedo* holding, as well as those of other cases

sustaining various summary proceedings without prior hearing, and considered them distinguishable. (Pp. 253-254 of 65 Cal.2d.) *Sokol* did recognize that a telephone is indispensable to legitimate business operations in modern commercial society (pp. 254-255), but it did not accord the subscriber a predisconnection hearing; it held only that the utility cannot be ordered to disconnect on receipt of a conclusionary notice from a law enforcement official, and that "whatever new procedure is hereafter devised must at a minimum require that the police obtain prior authorization to secure the termination of service by satisfying an impartial tribunal that they have probable cause to act, in a manner reasonably comparable to a proceeding before a magistrate to obtain a search warrant. In addition, after service is terminated the subscriber must be promptly afforded the opportunity to challenge the allegations of the police and to secure restoration of the service." (P. 256 of 65 Cal.2d.)

*Endler* held that "fundamental fairness requires that an individual be permitted to defend himself publicly against official charges, however informal, which threaten to stain his personal and professional future" (68 Cal.2d at p. 180), and that the employee there involved was entitled to a hearing in order to secure reinstatement or a new position after his discharge. However, the form the hearing was to take was left for future determination. (Pp. 181-182.) Nothing in *Endler* overrules or casts doubt upon *Escobedo*.

On the other hand and despite the fact that, as *Escobedo* recognizes, the statute requires the department to find that there is a reasonable possibility that a judgment may be recovered against an uninsured operator before it can demand security and suspend his license if he fails to post it, the department contends that *involvement* in an accident resulting in damage or injury (see § 16020, fn. 3, *ante*) is the only criterion for applying the statute, that it need make no determination of culpability other than to ascertain whether the driver so involved falls within one of the exemptions specified by the statute (§§ 16050-16060),[5] and that the Legislature by setting up such specific exemptions disclosed an intent to exclude consideration of any other evidence of nonculpability.

---

[5] Certain of such exemptions are predicated upon facts which relate to culpability (§ 16052, no damage to another, or vehicle legally parked; § 16053, release from liability, payment of any adverse judgment; § 16054, payment to the involved driver by the insurance carrier for the *other* persons).

However, the department's arguments ignore the facts expressly spelled out in *Escobedo,* that the statute directs that the security required of the involved driver is to be in such sum as shall be sufficient in the judgment of the department to satisfy "any [court] judgment" which "may be recovered" against him, that recovery of a judgment depends in theory at least on culpability, and that the facts and legal principles governing the recovery of damage judgments provide the standard to be followed by the department.[6] Moreover, the financial responsibility laws have been frequently amended since *Escobedo* was decided in 1950, including former section 420 (the antecedent of present § 16020), but the Legislature has left unchanged in any material respect the provisions here at issue. ■ "Statutes are to be interpreted by assuming that the Legislature was aware of the existing judicial decisions. [Citation.] ■ Moreover, failure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, is indicative of an intention to leave the law unchanged in that respect." (*Alter* v. *Michael* (1966) 64 Cal.2d 480, 482-483 [50 Cal.Rptr. 553, 413 P.2d 153], quoting from *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 618 [7 Cal. Rptr. 129, 354 P.2d 657] [5, 6]; see also cases there cited.) And as late as 1962 this court confirmed in *Simmons* v. *Civil Service Emp. Ins. Co.,* 57 Cal.2d 381, 385 [19 Cal.Rptr. 662, 369 P.2d 262], that the financial responsibility laws of this state provide for the suspension of the operator's license of the driver who has failed to provide financial relief to those injured through his negligence. (see also *Atlantic Nat. Ins. Co.* v. *Armstrong* (1966) 65 Cal.2d 100, 106 [52 Cal.Rptr. 569, 416 P.2d 801], and cases there cited.)

■ To summarize, the statutory scheme as laid down by the Legislature and confirmed by this court establishes these two ground rules: Before ordering suspension of the license of a driver involved in an accident the department must determine whether there is a reasonable possibility that a judgment may be recovered against the driver, and so must consider culpability; and an order suspending the license is subject to

---

[6] *Turner* v. *Department Motor Vehicles* (1968) 265 Cal.App.2d 649 [71 Cal.Rptr. 616], cited by the department, did not reach the question of whether the department need consider the issue of culpability before suspension of a license. *Turner* held only, in reliance upon *Escobedo,* that neither the statute nor constitutional principles required a departmental hearing on the culpability issue "assuming the existence of such an issue." (Pp. 652-653.)

court review. Accordingly, we need not consider possible constitutional infirmities of a statute which dispensed with any necessity to consider fault. The questions remain as to the extent to which the department must take fault into consideration, and as to the extent of review by the courts.

It is a matter of common knowledge that the accounts given by witnesses and by those involved in an accident will vary widely as to how it occurred, what caused it, and other surrounding circumstances. The question of blame or fault is commonly in dispute, and is of course one of the primary issues upon which the recovery of a judgment for damages will turn. The department, which is charged with the task of examining applicants for drivers' licenses, and of issuing, refusing, suspending or revoking such licenses, should find no particular difficulties in determining from the accident reports which involved drivers are obligated to make (§ 16000, former § 419) and from other evidence submitted to it[7] whether there is a reasonable possibility that a judgment may be recovered against the involved driver, based on his possible culpability.

■ The department need not decide as between conflicting versions of the accident whether the driver was in fact at fault; if there is any credible evidence on the basis of which he could reasonably be considered culpable, such evidence, which could be believed by the trier of fact in a lawsuit, will suffice to support a determination that it is reasonably possible that a judgment may be recovered against the driver. ■ Neither is the department called upon to make sophisticated judgments upon any claims of contributory negligence or of last clear chance etc. which may arise; such claims commonly turn in the first instance upon determinations of disputed facts, and as stated such determinations are not the responsibility of the department. Even if the facts are con-

---

[7]Section 16020 directs that ''The department shall determine the amount of security deposit upon the basis of the reports or *other evidence* submitted to it . . . but shall not require a deposit of security for the benefit of any person *when evidence has not been submitted by*'' him ''as to the extent of his injuries or the damage to his property . . . .'' (Italics added.)

Section 16024 authorizes the department to reduce the security ordered if in its judgment the amount is exessive, and section 16084 directs the department to correct any errors it may have made by way of action or inaction based upon lack of information or upon erroneous information, if and when it receives ''correct information.'' Section 16100 specifies that ''. . . the suspension of registration [of a vehicle involved in an accident] shall not apply upon filing of evidence with the department that the vehicle was not, at the time of the accident, being operated with the permission, express or implied, of the owner. . . .''

ceded, questions of contributory negligence and of last clear chance, if at all close or intricate, will not serve to defeat a decision by the department that a judgment against the involved driver is reasonably possible[8] Thus, contrary to suggestions of the department, no undue burden would appear in requiring it to consider the question of culpability in determining the reasonable possibility of a judgment for damages against the driver.

■ With respect to court review of a department order suspending a license, the driver alleging nonculpability is entitled to a review of the evidence submitted to the department so that the court can determine whether it supports the implied finding that there is a reasonable possibility that a judgment for damages will be rendered against the driver (and owner). (See *Serenko* v. *Bright* (1968) 263 Cal.App.2d 682, 692 [70 Cal.Rptr. 1]; *Finley* v. *Orr* (1968) 262 Cal.App. 2d 656, 665-666 [69 Cal.Rptr. 137]; *Johnson* v. *Department of Motor Vehicles* (1960) 177 Cal.App.2d 440 [2 Cal.Rptr. 235].) The issue is not that indicated by the trial court in this case: whether the driver was actually without fault in the accident. Instead, the issue is only whether the evidence before the department supports its implied finding of the reasonable possibility of a judgment. Accordingly, it is appropriate to limit the scope of court review to a review of the department's action, rather than an unlimited new trial on the issue of fault.

The petition for writ of prohibition is denied, and the alternative writ heretofore issued is discharged. The trial court is authorized to proceed subject to the principles set forth in this opinion.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

Petitioners' application for a rehearing was denied June 25, 1969.

[8]It may be noted that at all times since enactment of the financial responsibility laws in 1947 the statute has directed that neither the reports made to the department nor its findings, etc., constitute evidence or may be referred to at trial of any damage action.

Section 40833 (former § 419, subd. (d); and § 420.8) specifically provides: "Neither the report required by Sections 16000, 16001, 16002, or 16003, the action taken by the department pursuant to Chapter 1 of Division 7 (commencing at Section 16000), the findings, if any, of the department upon which action is based, nor the security filed as provided in that chapter shall be referred to in any way, or be any evidence of the negligence or due care of any party, at the trial of any action at law to recover damages." (See also § 16005.)