CLARICE E. WILLIAMS, PLAINTIFF-APPELLANT, v. AR-
THUR J. SILLS, ATTORNEY GENERAL OF THE STATE
OF NEW JERSEY AND JUNE STRELECKI, DIRECTOR
OF THE DIVISION OF MOTOR VEHICLES IN THE DE-
PARTMENT OF LAW AND PUBLIC SAFETY, DEFEND-
ANTS-RESPONDENTS.

Argued October 20, 1969—Decided January 19, 1970.

*Mr. Elliot M. Baumgart,* attorney for the Essex County Legal Services Corporation, argued the cause for appellant (*Mr. Maurice R. Strickland,* Administrator, Essex County Legal Services Corporation, attorney).

*Mr. Thaddeus C. Raczkowski,* Deputy Attorney General, argued the cause for respondents (*Mr. Arthur J. Sills,* Attorney General, attorney; *Mr. Stephen Skillman,* Deputy Attorney General, of counsel).

The opinion of the court was delivered by

JACOBS, J. The plaintiff filed a complaint in the Chancery Division seeking (1) a declaration that *N. J. S. A.* 39:6–25 is unconstitutional and (2) a restraint against its enforcement. The court found the statute to be constitutional and vacated

the interim restraints which it had granted. The plaintiff appealed to the Appellate Division and we certified the matter while it was awaiting argument there.

The plaintiff was the owner and operator of an automobile which was involved in an accident on July 5, 1968. She says that she had stopped in a traffic line, that her car was struck in the rear by a car which had itself been struck, and that she in turn struck the car ahead of her. An accident report was filed with the Division of Motor Vehicles by Mrs. Burton, the owner of one of the vehicles involved in the accident, and the Division evaluated the damage to the Burton vehicle and its occupants in the sum of $400. The plaintiff's automobile was not covered by any liability insurance and under date of October 25, 1968 the Division notified the plaintiff that, under *N. J. S. A.* 39:6–25 her license would be suspended unless, on or before November 11, 1968, she either deposited $400 "as security to cover any judgment or judgments for damages resulting from the accident" or filed a "release from liability" or a "settlement agreement." The November 11 deadline was apparently extended to November 25.

The plaintiff did not deposit any security or file any release or settlement agreement but on November 27 filed a complaint in the Chancery Division and obtained an order to show cause with interim restraints. The December 6 return date of the order to show cause was extended to December 13 by consent of the parties. On December 2 the Division of Motor Vehicles notified the attorney for the plaintiff that if an administrative hearing was desired a convenient date therefor would be fixed. Under date of December 5, the attorney for the plaintiff notified the Division that there was no dispute as to her being an uninsured motorist who was involved in an accident resulting in damage in excess of $200 and that "she respectfully declines the opportunity to have an administrative hearing in this matter."

. On the adjourned return date of the order to show cause the Chancery Division, after having heard argument and having considered the briefs submitted by the parties, delivered

an oral opinion which found *N. J. S. A.* 39 :6–25 to be a reasonable exercise of the State's police power and which specifically noted that the plaintiff had rejected the opportunity to be heard administratively before any suspension of her license would take effect. The Chancery Division duly entered its judgment and, following the filing of a notice of appeal, ordered that further proceedings to enforce the judgment be stayed pending the outcome of the appeal.

*N. J. S. A.* 39 :6–25 is part and parcel of the Motor Vehicle Security-Responsibility Law which was adopted in our State in 1952. *See L.* 1952, *c.* 173; *N. J. S. A.* 39 :6–23 *et seq.* The Law was modeled largely on the provisions of the Uniform Vehicle Code and has counterparts in substantially all of the states. *See Kesler v. Department of Public Safety,* 369 *U. S.* 153, 82 *S. Ct.* 807, 7 *L. Ed.* 2d 641 (1962). Its principal design was to protect the public against financially irresponsible motorists. To that end it admittedly could have required that all motorists carry liability insurance (*see Ex parte Poresky,* 290 *U. S.* 30, 32, 54 *S. Ct.* 3, 78 *L. Ed.* 152, 153 (1933)); instead it took the lesser course of requiring that if a motorist who is uninsured is involved in an accident resulting in more than $100 ($200 since 1967) damage to another, his license shall be suspended unless he deposits security, in an amount fixed by the Director of the Division of Motor Vehicles, to cover any judgment resulting from the accident or files a release from liability or a settlement agreement. This requirement has been the subject of repeated constitutional attacks throughout the states but has widely withstood them in the reported cases. *See State v. Finley,* 198 *Kan.* 585, 426 *P. 2d* 251 (1967) ; *Farmer v. Killingsworth,* 102 *Ariz.* 44, 424 *P.* 2d 172 (1967) ; *Turmon v. State Dept. of Public Safety,* 222 *Ga.* 843, 152 *S. E.* 2d 884 (1967) ; *Adams v. City of Pocatello,* 91 *Idaho* 99, 416 *P.* 2d 46 (1966) ; *Larson v. Warren,* 132 *So.* 2d 177 (*Fla.* 1961), appeal dismissed, 369 *U. S.* 427, 82 *S. Ct.* 879, 8 *L. Ed.* 2d 7 (1962) ; *Velletri v. Lussier,* 88 *R. I.* 352, 148 *A.* 2d 360 (1959) ; *Bookbinder v. Hults,* 19 *Misc.* 2d 1062, 192 *N. Y. S.* 2d 331 (*Sup.*

*Ct.* 1959) ; *Sharp v. Dept. of Public Safety,* 114 *So.* 2d 121 (*La. Ct. App.* 1959) ; *Montgomery v. Blazek,* 161 *Neb.* 349, 73 *N. W.* 2d 402 (1955) ; *Franklin v. Scurlock,* 224 *Ark.* 168, 272 *S. W.* 2d 62 (1954) ; *State v. Stehlek,* 262 *Wis.* 642, 56 *N. W.* 2d 514 (1953) ; *Gillaspie v. Dept. of Public Safety,* 152 *Tex.* 459, 259 *S. W.* 2d 177 (1953) ; *Doyle v. Kahl,* 242 *Iowa* 153, 46 *N. W.* 2d 52 (1951) ; *Ballow v. Reeves,* 238 *S. W. 2d* 141 (*Ky. Ct. App.* 1951) ; *Escobedo v. State Dept. of Motor Vehicles,* 35 *Cal.* 2d 870, 222 *P.* 2d 1 (1950) ; *De Vries v. Alger,* 329 *Mich.* 68, 44 *N. W.* 2d 872 (1950) ; *Rosenblum v. Griffin,* 89 *N. H.* 314, 197 *A.* 701 (1938) ; *see also* Annotation, "Validity of motor vehicle financial responsibility act," 35 *A. L. R.* 2d 1011 (1954) ; *but see People v. Nothaus,* 147 *Colo.* 210, 363 *P.* 2d 180 (1961).

The plaintiff suggests that the many cases upholding the financial responsibility requirement rested on the notion that motor vehicle licenses are privileges which are not entitled to the protection afforded to property rights, a notion rejected by us in *Bechler v. Parsekian,* 36 *N. J.* 242, 256–257 (1961). While it is true that some of the cited cases spoke in terms of privilege, others clearly spoke in the same terms as did *Bechler.* Thus in *Berberian v. Lussier,* 87 *R. I.* 226, 139 *A.* 2d 869 (1958), the Rhode Island Supreme Court explicitly acknowledged that a motor vehicle license was more than a mere privilege and was entitled to the constitutional guarantees; it held that "whatever may be its nature" it was constitutionally subject to the requirements of the State's financial responsibility statute. 139 *A.* 2d, at 872. *See also Escobedo v. State Dept. of Motor Vehicles, supra,* 222 *P.* 2d, at 5 ; *Schecter v. Killingsworth,* 93 *Ariz.* 273, 380 *P. 2d* 136, 140 (1963).

The court in *Berberian* dealt with and disposed of due process and equal protection contentions similar to those advanced by the plaintiff here. On the due process attack, it pointed out that the purpose of the statute was to promote the welfare of the people "by minimizing the hardship flowing from the financial irresponsibility of users of the highways

who are involved in accidents," and that to accomplish that purpose the State had the right, in exercise of its police power, to "prescribe uniform regulations concerning the establishment of financial responsibility as a condition precedent to the lawful operation of motor vehicles upon its highways." 139 *A.* 2d, at 873. On the equal protection attack, it noted that legislation which "applies equally to all in a reasonably designated group is neither discriminatory nor class legislation" and that under the clear wording of the statute, it applied equally to all involved in accidents resulting in injury to others. 139 *A.* 2d, at 873.

In *Schecter v. Killingsworth, supra,* the Arizona Supreme Court recognized that the suspension of a license for failure to comply with the State's financial responsibility statute deals with a right rather than a mere privilege (380 *P.* 2d, at 140); it nonetheless found no difficulty in sustaining the statute as against due process, equal protection, and other constitutional attacks. It noted that although the principal objective of the statute was to protect the public from the financial hardship which may result from the use of automobiles by financially irresponsible persons, there may be other incidental effects such as the encouragement of motorists to obtain insurance and to drive more carefully. 380 *P.* 2d, at 140–141. *Cf. Selected Risks Insurance Co. v. Zullo,* 48 *N. J.* 362, 368 (1966).

On the due process issue, the court in *Schecter* noted that the social objective of preventing financial hardship and possible reliance on the welfare agencies of the state was "a permissible goal of police power action." 380 *P.* 2d, at 141. And on the equal protection issue it pointed out that reasonable classification is valid, that "one who has been involved in an accident is more likely to have judgment rendered against him than one who has not" and that "[s]ingling out uninsured motorists who have had accidents as the class to whom this law applies is not arbitrary, unreasonable, or oppressive." 380 *P.* 2d, at 141. *Cf.* McWilliams, J. dissenting in *People v. Nothaus, supra,* 363 *P.* 2d, at 183–184:

If legislation requiring insurance or other security as a condition precedent to the right to operate a motor vehicle on the highway be valid, it would seem to follow that such compulsion may be limited to depend on contingencies, such as involvement in an accident. At the very least this type of legislation does have one salutory effect: if the statute be followed it makes certain that a motorist shall not become involved in two accidents and be financially irresponsible *in both*!

The reasoning of the aforequoted opinions readily sustains the constitutionality of a financial responsibility statute in which the matter of culpability in the accident plays no part whatever; many of the cases expressly so hold. *See, e. g., Agee v. Kansas Highway Comm. Motor Vehicle Dept.,* 198 *Kan.* 173, 422 *P.* 2d. 949, 954 (1967); *Velletri v. Lussier, supra,* 148 *A.* 2d, at 361; *State v. Stehlek, supra,* 56 *N. W.* 2d, at 521; *Gillaspie v. Dept. of Public Safety, supra,* 259 *S. W.* 2d, at 181; *Rosenblum v. Griffin, supra,* 197 *A.,* at 703. *In Schecter, supra,* the court recognized these holdings but pointed out that there still remains the matter of legislative intent, namely, what did the Legislature contemplate by its requirement that the director or superintendent of the Motor Vehicle Division determine the amount of security which shall be sufficient to satisfy any judgment resulting from the accident which may be recovered against the operator *(see N. J. S. A.* 39:6–25). In this connection, the court said (380 *P.* 2d, at 143):

The statute's requirement of security is based, not upon the establishment of negligence, but upon the standard that, in the opinion of the administrative official, a judgment *may* be recovered against the motorist. Thus, the superintendent need not decide on the basis of conflicting evidence whether a motorist was in fact, culpable, but must determine if there is any reasonable possibility that a judgment will be recovered against him and the amount thereof. Whether there is such a reasonable possibility is a finding that must be made by the superintendent only after an administrative hearing, if requested. Furthermore, this finding is subject to judicial review under *A. R. S.* § 28-1122, *subd. B.*

*See also Burri v. Campbell,* 102 *Ariz.* 541, 434 *P.* 2d 627, 629 (1968).

The approach represented by *Schecter* is spelled out in further detail in *Escobedo v. State Dept. of Motor Vehicles, supra,* 35 *Cal.* 2d 870, 222 *P.* 2d 1 and *Orr v. Superior Court for the City and County of San Francisco, Cal.,* 77 *Cal. Rptr.* 816, 454 *P.* 2d 712 (1969). In *Escobedo* the California Supreme Court upheld its financial responsibility statute, noting that such laws "do not unconstitutionally discriminate against the poor" (222 *P.* 2d, at 6); on the contrary they are designed to protect against financial irresponsibilities which have their greatest impact on the poor. In its interpretation of the statute the court stated that security was required not from every operator involved in an accident but only from those against whom, in the opinion of the director, "a judgment might be recovered." 222 *P.* 2d, at 6. This language was implemented in *Orr* where the court held that before ordering a suspension the director must determine whether there is "reasonable possibility" that a judgment may be recovered and to that extent must consider culpability. 77 *Cal. Rptr.,* at 820, 454 *P.* 2d, at 716.

*Orr* specifically rejected the suggestion that this would place an undue burden on the Department of Motor Vehicles. It pointed out that the department "need not decide as between conflicting versions of the accident whether the driver was in fact at fault * * *." Nor is it called upon to pass on claims such as "contributory negligence or of last clear chance," etc. Its function is to determine whether there is any "reasonable possibility" that a judgment for damages may be rendered against the operator. 77 *Cal. Rptr.,* at 821, 454 *P.* 2d, at 717. In most accidents such reasonable possibility will obviously appear. It will only be in rare instances that the circumstances would negate any reasonable possibility of recovery. Illustratively, the chain accident in the case before us might well be one which the director would find no reasonable possibility of recovery against the plaintiff.

The California Supreme Court's interpretation of its statute in *Orr* sought to carry out the broad legislative ob-

jective without dealing unfairly with licensees or imposing undue administrative burdens. We adopt it with respect to our own statute which is comparable in its pertinent terms (*N. J. S. A.* 39:6–25(a)). When the Division notified the plaintiff Clarice E. Williams that her license would be suspended unless she deposited $400 as security, it should have included a statement to the effect that, on request, she would be afforded an administrative hearing. *See N. J. S. A.* 39:6–50; *Bechler v. Parsekian, supra,* 36 *N. J.,* at 255. Later, but before any suspension took effect, she was told that she could have such hearing but she declined it. She apparently did so because of her understanding that the Division would not permit a showing by her at the hearing that there was no reasonable possibility of recovery. In the light of our holding that such a showing on her part would obviate the need for the deposit she should now be afforded a suitable administrative hearing and the matter will be remanded to the Division for that purpose.

What has been said earlier in this opinion is sufficient to dispose of all of the plaintiff's contentions except one grounded on Article 1, Section 9, para. 3 of the United States Constitution. That paragraph states that "No Bill of Attainder or ex post facto Law shall be passed." The final point in the plaintiff's brief asserts that *N. J. S. A.* 39:6–25 is unconstitutional as a bill of attainder. In none of the many cited cases upholding financial responsibility enactments was a similar point raised and of course it has no merit. The statute under attack does not provide for legislative punishment of a specifically designated individual or group (*United States v. Brown,* 381 *U. S.* 437, 447, 85 *S. Ct.* 1707, 14 *L. Ed.* 2d 484, 491 (1965); it does provide for general regulation in furtherance of the public welfare, is accompanied by adequate opportunity for hearing and judicial review, and is in no sense a bill of attainder. *See Application of Marvin,* 53 *N. J.* 147, 154–155, *cert. denied,* 396 *U. S.* 820, 90 *S. Ct.* 62, 24 *L. Ed.* 2d 72 (1969); *Accident Index Bureau, Inc. v. Male,*

95 *N. J. Super.* 39, 49 (*App. Div.* 1967), aff'd, 51 *N. J.* 107 (1968).
 Remanded.

WEINTRAUB, C. J., (concurring). I join in the opinion of the Court but add a word with respect to the constitutional issues. Having decided that there should be financial security with respect to motor vehicle accidents, the Legislature gave the motorists a choice between furnishing that security before or after the happening of an accident. It is compatible with due process to require security in advance of the accident, and of course without regard to a probability of future fault. If the Legislature may thus require security in advance of the occurrence, I see no difficulty, under either the due process clause or the equal protection clause, in the circumstance that the Legislature permitted all motorists to choose to post the security before or after the happening of the event. Thus viewed, a failure to provide for an inquiry as to liability with respect to the motorist who elected to post the security after an accident is not arbitrary or invidious. To the contrary, the statute deals with an even hand with all motorists, to achieve security in advance of a determination as to fault. I do not quarrel with an interpretation of the statute which calls for an administrative hearing in which the critical consideration will be the absence of a possibility of fault, but I have no doubt the Legislature need not provide for that inquiry.

*For remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.