Argued April 19, affirmed July 3, petition for rehearing denied
August 8, petition for review denied September 26, 1972

## BOYKIN ET AL, *Petitioners, v.* OTT, *Respondent.*

498 P2d 815

*D. Richard Fischer,* Staff Attorney, Lane County, Legal Aid & Lawyer Referral Office, Eugene, and *John A. Strait,* Legal Aid Service, Portland, argued the cause and filed the brief for petitioners.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

SCHWAB, C. J.

The Oregon Financial Responsibility Law, ORS ch 486, requires uninsured drivers and owners of motor vehicles involved in certain accidents to prove "future financial responsibility," normally meaning to purchase insurance. Acting under the authority of that Law, the Motor Vehicles Division suspended the drivers' licenses and motor vehicle registrations of the 11 petitioners, all of whom were uninsured[1] drivers and/or owners of vehicles involved in separate, unrelated accidents, and none of whom filed proof of future responsibility. At a subsequent consolidated administrative hearing the petitioners claimed they were not at fault in any of the accidents, and they were financially unable to prove future responsibility, i.e., purchase insurance. The Division nevertheless upheld the suspensions because it concluded the questions of fault and indigency are irrelevant under the Financial Responsibility Law. On appeal petitioners argue the Division incorrectly interpreted the statute, or it is unconstitutional on due process and equal protection grounds.

---

[1] Technically, the requirement that drivers and vehicle owners file proof of future financial responsibility following an accident applies to both those with insurance and those without it. *See,* ORS 486.021. However, drivers and owners who have insurance at the time of the accident are exempt from this requirement. *See,* ORS 486.041 (3).

The material facts are substantially the same as to each petitioner. For example, petitioner Kenneth Kirchem was driving east on S.E. Ankeny in Portland. As Kirchem entered the intersection of S.E. Ankeny and S.E. 14th, his car was struck by another car, southbound on S.E. 14th. The other driver was cited for failure to obey a stop sign, and the other driver's insurance company admitted liability and settled Kirchem's claim for damages. As another example, petitioner Randolph Selten, while making a right turn from Pearl Street, Eugene, into a parking lot, was struck by another car as it suddenly pulled out from a parking space. The other driver was cited for failure to yield the right-of-way, and the other driver's insurance company admitted liability and settled Selten's claim for damages.

The Division then notified Kirchem, Selten, and the other petitioners following the accidents in which they were involved that they must file proof of future financial responsibility or their drivers' licenses[2] would be suspended. None of the petitioners was financially able to purchase insurance. For example, Kirchem, a student, is supporting his wife and two children on an income of $200 a month, and Selten is unemployed.

Because of their failure to file proof of future responsibility, the Division, without any prior hearing, suspended each petitioner's driver's license. The administrative proceeding here under review followed.

Since the early days of this century state legis-

[2] Although the Financial Responsibility Law applies to both drivers and owners of motor vehicles and can result in the suspension of both drivers' licenses and motor vehicle registrations, for brevity we will hereinafter use only the term "drivers" and "drivers' licenses."

latures have sought methods to insure compensation for victims of automobile accidents.

"As automobiles became increasingly available to drivers and owners who were able to afford only the luxury of the automobile and not the damages which could be done by the machine, the necessity for some sort of corrective legislation was apparent * * *." W. B. Crow, *The Traffic Victim: An Increasing Social Problem,* 1 Will L J 539, 541 (1961).

A small number of states have responded to this problem by making automobile liability insurance compulsory. *See,* Crow, 1 Will L J, supra at 547-51. The vast majority of states, including Oregon, have instead enacted financial responsibility legislation similar to that here in question. *See,* Crow, 1 Will L J, supra at 540-47.

These financial responsibility laws permit a person to own and operate an automobile without having insurance unless and until some event occurs that indicates he might be careless and unable to pay the damages that could be caused by his carelessness. Then, for example, a driver's involvement in certain accidents triggers various requirements under the different financial responsibility laws, the most common being that the driver must: (1) post a security deposit to cover any claims arising from the past accident, and (2) prove future financial responsibility, i.e., purchase insurance, to cover any claims that may arise from future accidents. In all states the sanction for non-compliance with these requirements is loss of one's driver's license.

In Oregon, the legislative assembly, during its last session, repealed all sections of the Financial Responsibility Law relating to the security-deposit-for-

the-past-accident requirement. Oregon Laws 1971, ch 742, pp 1868-73. Thus, as it presently reads, the keystone section of the Financial Responsibility Law is ORS 486.021, which provides:

"Following notice to the division of an accident originating from the operation of a vehicle upon any highway within this state which has resulted in damage to the property of any one person in excess of $200 or injury or death to person, the driver and owner of a vehicle which is in any manner involved shall except as otherwise provided by this chapter within 60 days file with the division and thereafter maintain for a period of five years proof of future responsibility."

The requirement of ORS 486.021 is subject to exceptions enumerated in ORS 486.041.⑨

---

⑨ ORS 486.041 provides:

"Both the driver and the owner are exempt from the requirement of this chapter that proof of future responsibility be given if the person claiming exemption furnishes to the division proof that:

"(1) At the time of the accident the driver was operating a vehicle owned by or leased to and operated under the direction of the United States of America, this state or any municipality or subdivision thereof;

"(2) At the time of the accident the vehicle was lawfully parked;

"(3) Such liability as may arise from the driver's operation of the vehicle involved in the accident was covered by some form of liability insurance or bond which complies with the requirements of this chapter;

"(4) The owner of the vehicle involved in the accident was a self-insurer under the provisions of this chapter;

"(5) The vehicle involved in the accident was being operated under a permit issued by the Public Utility Commissioner of Oregon; or

"(6) At the time of the accident his vehicle was being operated without his permission, expressed or implied, or was parked by a person who had been operating such vehicle without his permission unless the vehicle at the time of its taking had been left unattended in a condition prohibited by a regulation or ordinance designed to prevent the operation of vehicles by unauthorized persons."

"Future responsibility" is defined as:

"* * * the ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of the proof thereof arising out of the ownership, operation, maintenance or use of a vehicle * * *." ORS 486.011 (7).

If a driver was not insured at the time of an accident, as a practical matter ORS 486.021 and 486.011 (7) mean that he must purchase an automobile liability insurance policy for at least the minimum amount[4] that complies with other requirements, *see,* ORS 486.506 to 486.566.[5]

If the driver fails to purchase the required insurance or otherwise prove future financial responsibility, ORS 486.211 provides:

"* * * [T]he division shall revoke or suspend the license and the vehicle registration for all vehicles of any person who:
"* * * * *

"(3) Fails to file with the division proof of future responsibility when such proof is required of him by this chapter.
"* * * * * *"

---

[4] ORS 486.011 (7) provides:
"* * * * *

"(a) $10,000 because of bodily injury to or death of one person in any one accident;

"(b) Subject to that limit for one person, $20,000 because of bodily injury to or death of two or more persons in any one accident; and

"(c) $5,000 because of injury to or destruction of the property of others in any one accident."

[5] Instead of purchasing insurance, a driver required to prove future responsibility by ORS 486.021 can file with the Division: (1) a $25,000 bond, ORS 486.411 (2), ORS 486.606 to ORS 486.616; or (2) a certificate that he has deposited with the State Treasurer $25,000 in cash or securities, ORS 486.411 (3), ORS 486.621 to ORS 486.626; or (3) evidence that he is self-insured, ORS 486.411 (4), which is only available to persons who own more than 25 vehicles and meet other requirements, ORS 486.570.

I

As best we understand them, petitioners' major contentions are: (1) as a matter of statutory construction "fault is an issue" in determining whether the Financial Responsibility Law applies to a driver involved in an accident; and (2) if the Law is interpreted in such a way that "fault is not an issue" in its application, then it is unconstitutional.

Consideration of these arguments must begin with an analysis of what is meant by "fault" in this context. At oral argument petitioners conceded they do not mean fault in the sense of a determination in civil litigation that a driver was negligent. Instead, petitioners would be satisfied if the Division only considered whether there was a "reasonable possibility" that a driver was at fault in an accident.

It remains, however, unclear whether petitioners urge that the Division determine if there is a reasonable possibility that a driver was *primarily* at fault, or instead determine whether there is a reasonable possibility a driver was at fault *in any degree*. To illustrate: if two uninsured drivers were involved in an accident in which it appeared there was a reasonable possibility under comparative negligence concepts, ORS 18.470, that one was 90 per cent responsible and the other 10 per cent responsible for the accident, then we are not sure whether petitioners' argument would be that only the driver primarily at fault can be required to comply with the Financial Responsibility Law, or whether both drivers would be subject to the Law.

■ If it is petitioners' position that the Financial Responsibility Law applies only to drivers involved in accidents in which there is a reasonable possibility

they are primarily at fault, then we believe their contention is clearly wrong. The purpose of the Law is to identify possibly careless drivers, i.e., those more likely to be involved in accidents in the future, and to require such drivers to be able to pay for damages they may cause. It is a reasonable assumption—if not common knowledge—that a driver negligent *in any degree* in one accident is more likely to be in other accidents in the future. Thus, it is obvious to us that when there is a reasonable possibility a driver involved in an accident was careless, negligent, or at fault (we use these terms interchangeably for present purposes) in any degree, he must thereafter comply with the Financial Responsibility Law.

■ The closer question is whether the legislature intended the Financial Responsibility Law to apply to a driver involved in an accident who claims there is no reasonable possibility he was at fault in any degree.

Several courts have held that the *security-deposit requirement* of various financial responsibility laws applies only when there is a reasonable possibility a driver in an accident may have been at fault. *See, Bell v. Burson,* 402 US 535, 91 S Ct 1586, 29 L Ed 2d 90 (1971) (interpreting Georgia law); *Williams v. Sills,* 55 NJ 178, 260 A2d 505 (1970); *Orr v. Superior Court,* 71 Cal2d 220, 77 Cal Rptr 816, 454 P2d 712 (1969); *Schecter v. Killingsworth,* 93 Ariz 273, 380 P2d 136 (1963). However, as previously noted, the Oregon Financial Responsibility Law no longer contains a security-deposit requirement, and thus these decisions are not directly relevant to the question here presented. And we have found no cases that clearly consider the question of whether the separate *proof-of-future-financial-responsibility* requirement applies

only when there is a reasonable possibility a driver was at fault in an accident.

When a driver has been involved in an accident that otherwise brings him within the purview of the Financial Responsibility Law, we conclude he must thereafter file proof of future responsibility regardless of whether or not there is a reasonable possibility he was in any degree at fault in the accident.

We interpret the Financial Responsibility Law in this manner based both on its clear and unambiguous language and the history of its evolution.

ORS 486.021 states the general rule that drivers must prove future responsibility when they are "*in any manner* involved" (emphasis supplied) in an accident. The emphasized language of ORS 486.021 makes it impossible, we believe, to conclude the legislature intended the Law to apply only to drivers possibly at fault in an accident.

ORS 486.041 provides certain exceptions to the general rule of ORS 486.021. An automobile owner is, for example, exempt from the operation of the Financial Responsibility Law if his car was involved in an accident while "lawfully parked," ORS 486.041 (2), or while being operated without his permission, ORS 486.041 (6). While admittedly these are situations in which it is impossible for the owner to be at fault in any way, we cannot accept petitioners' suggestion that these two exceptions evidence a legislative intent to have the Financial Responsibility Law apply only to drivers possibly at fault in an accident, especially in light of the explicit language of ORS 486.021 that the Law applies to drivers involved in accidents "in any manner." Indeed, the fact that there are clearly-stated exceptions to the applicability of the Law in ORS

486.041, none of which exempts all drivers not at fault, would more likely indicate the legislature intended the statute to apply to persons like petitioners.

This conclusion draws additional support from the history of Oregon's Financial Responsibility Law. It appears that fault was a material element in applying Oregon's original statute, Oregon Laws 1935, ch 434, p 792, which provided that uninsured drivers who were found to be liable for damages and who failed to satisfy the judgment had to thereafter file proof of future financial responsibility. Oregon Laws 1935, ch 434, section 4, p 794. Experience proved, however, that this approach failed to achieve the goal of identifying the possibly careless driver and requiring him to be able to pay for any damages he may cause because few prospective plaintiffs were willing to add to the expense of their accidents by lengthy and expensive legal proceedings against a driver who would be unable to pay even if a judgment were entered against him. *See,* Crow, 1 Will L J, supra at 542.

In an attempt to expand the coverage of the Financial Responsibility Law, 1943 amendments added the language now codified in ORS 486.021 to the effect that drivers had to prove future responsibility when they were "in any manner involved in an accident." Oregon Laws 1943, ch 295, section 14, p 372. However, the 1943 legislation continued to make fault an element in that drivers did not have to prove future responsibility if two years had passed since the accident in which they were involved and no claims for damages had been filed. Oregon Laws 1943, ch 295, section 5, p 367. Thus, the shortcoming that had developed under the 1935 statute continued to be a problem; extremely careless and obviously judgment-proof drivers con-

tinued to drive without insurance when their victims were unwilling to resort to pointless legal proceedings.

In 1955, all prior statutes on this subject were repealed and replaced by new legislation which is substantially the same as that currently in force. Oregon Laws 1955, ch 429, p 483. The rule that drivers had to prove future responsibility after being "in any manner" involved in an accident was re-enacted. Oregon Laws 1955, ch 429, section 6, p 484 (now ORS 486.021). For the first time in the evolution of this legislation a separate section was added, enumerating the exceptions to the proof-of-future-responsibility requirement. Oregon Laws 1955, ch 429, section 18, p 488 (now ORS 486.041). Not only did the legislature not include any exception for all drivers not at fault, but, most significantly, they repealed the prior rule that drivers were exempt when two years had passed without any claim for damages having been made.

This evolution from earlier statutes in which fault was, directly or indirectly, relevant to the applicability of the Financial Responsibility Law to the current statutes which are silent on the question of fault convinces us the legislature intended that fault not be considered in applying the current statute.

Having adopted this interpretation of the Financial Responsibility Law, we must reach petitioners' constitutional arguments. They first contend the procedures followed by the Division denied them due process in that there was no hearing on the question of possible fault prior to the suspension of their drivers' licenses.

Until a year ago, a majority of American courts had upheld the constitutionality of financial responsibility laws against a variety of challenges, *see,* Anno-

tation, 35 ALR2d 1011 (1954), although there was at least one decision, *People v. Nothaus,* 147 Colo 210, 363 P2d 180 (1961), which reached the opposite result.

Then the United States Supreme Court's decision in *Bell v. Burson,* 402 US 535, 91 S Ct 1586, 29 L Ed 2d 90 (1971), substantially changed the law on this issue. In that case the court held: (1) regardless of whether nominated as a right or a privilege,[6] an issued driver's license is a valuable entitlement that cannot be suspended or revoked without according the licensee that procedural due process of law required by the Fourteenth Amendment; (2) due process normally requires that *prior* to any suspension the licensee be given notice of intent to suspend and notice of the availability of a hearing; and (3) due process normally requires that, if requested, the licensee be given a hearing "appropriate to the circumstances" *prior* to any suspension.[7]

■ All parties in this case seem to agree that *Bell v. Burson,* supra, requires notice prior to the suspension of a driver's license because of failure to file proof of financial responsibility. The decision of the Administrator of the Motor Vehicles Division filed at the conclusion of the administrative proceedings below states:

> "The division *prior to* revoking or suspending a driver's license customarily gives a licensee 20 days notice of its intent to revoke or suspend for one of the grounds specified in ORS 486.211 * * *."

---

[6] Oregon statutes refer to a driver's license as a privilege. *See,* ORS 482.010 (7); ORS 486.291.

[7] Bell v. Burson, 402 US 535, 91 S Ct 1586, 29 L Ed 2d 90 (1971), further held that the state of Georgia's security-deposit-for-the-past-accident requirement was based on fault concepts. This holding is not directly relevant to the questions here presented because, as previously noted, Oregon has repealed all statutes relating to this requirement.

If "customarily" means always, and if this notice of intent to suspend includes notice about the availability of a hearing,[9] this practice affords due process within the meaning of *Bell v. Burson,* supra.

■ Concerning the availability of a hearing prior to suspension, the Administrator's decision states such will be granted

"* * * if the division receives notice or information prior to suspension indicating that there has been or may have been an official mistake of fact concerning the identity of the driver or owner, the ownership of the vehicle or the happening of the accident. In such case the facts upon which depends the mandatory duty of the division to suspend or revoke in ORS 486.211 are in question, and the division would not have the power under that statute to suspend or revoke prior to a hearing to determine the existence of those facts."

In other words, as we understand the Administrator's position, the Division grants a hearing prior to suspension when a licensee requests it and claims he is not subject to the Financial Responsibility Law, e.g., by claiming that there were no injuries or less than $200 property damage in the accident in which he was involved, ORS 486.211, or that he comes within one of the statutory exceptions, ORS 486.041, etc. However, since petitioners have consistently conceded they are subject to the Financial Responsibility Law, except for their arguments concerning fault and indigency, no error was committed by not granting a pre-suspension hearing in this case.

Petitioners' ultimate due process contention is

---

[9] The record before us does not include a copy of the notification form used by the Division.

that a pre-suspension hearing "appropriate to the circumstances" must include an opportunity to contest the question of fault. Our interpretation of the Financial Responsibility Law answers this argument. Since fault is not of any relevance in applying the Law, there is nothing violative of due process in excluding consideration of fault at the pre-suspension hearing.[9]

Petitioners next argue the Financial Responsibility Law, by excluding fault as a relevant consideration, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. They point out the operation of the Law creates two groups of uninsured drivers: (1) those lucky enough not to be involved in accidents, who are permitted to continue to drive without insurance; and

---

[9] We assume without deciding for present purposes that the facts upon which the application of the Financial Responsibility Law depends must always be considered at a pre-suspension administrative hearing. Going beyond the present case, however, it appears that this need not necessarily always be the case. ORS 486.106 provides:

"(1) The driver of a vehicle which is in any manner involved in an accident upon any highway within this state, which has resulted in damage to the property of any one person in excess of $200 or in bodily injury to or death of any person, shall, within 72 hours after such accident, report it to the division on a form furnished by it.

"(2) The form of accident report required under subsection (1) of this section shall contain information sufficient to enable the division to determine whether the filing of proof of future responsibility under this chapter is inapplicable by reason of the existence of some form of liability insurance which complies with the requirements of this chapter.

"* * * * *."

Under this statute, the Division may receive a driver's accident report which establishes that he comes within the requirements of the Financial Responsibility Law. In such a situation it may well be that a pre-suspension hearing is unnecessary. However, since this question was not briefed or argued in the present case, we express no view on it at this time.

(2) those unlucky enough to be in accidents in which they are not at fault, i.e., are the victims of another's negligence, who are not permitted to continue to drive without purchasing insurance. Petitioners claim this creates an irrational classification.

Our role is not to pass on the wisdom of a statutory scheme, but only to determine whether there is the constitutionally-required minimum rationality to the classification it creates.

■ We start with the premise that the public policy of this state favors as great a number as possible of automobile owners and operators having liability insurance. Indeed, the state could constitutionally make having insurance a compulsory prerequisite to owning or operating a motor vehicle. *See, Ex Parte Poresky,* 290 US 30, 54 S Ct 3, 78 L Ed 152 (1933).

Instead, the legislature has adopted the alternative approach reflected in the Financial Responsibility Law. As discussed above, this Law could be interpreted to mean drivers involved in accidents must purchase insurance: (1) if there is a reasonable possibility they were at fault in any degree; or (2) regardless of the question of whether they were possibly at fault in any degree. And, as stated above, honoring what we perceive to have been the legislature's intent, we have adopted the second interpretation.

■ We believe it is obvious the first possible interpretation would be constitutional, that is, it would create a not-irrational classification. It might, however, be a somewhat imperfect classification because it would be a very large net; it could well be the Division would properly determine there was a reasonable possibility a driver was at fault in some small degree,

but subsequent civil or criminal litigation would establish the driver was not at fault in any degree. Nevertheless, such a hypothetical driver would remain subject to the proof-of-future-responsibility requirement.

It follows, we believe, that by requiring all drivers involved in accidents "in any manner," i.e., regardless of fault, to purchase insurance the legislature has not created a constitutionally-irrational classification. The legislature may well have reasoned as follows:

First, any time a driver is operating a vehicle and is involved in an accident there is a reasonable possibility the driver was at fault in some degree, if not in the sense that that term is used in civil litigation, at least in the sense that he could have done something that would have avoided the accident. It is significant that the legislature by statute has exempted from the operation of the Financial Responsibility Law those accidents in which there is absolutely no possibility of any fault, see, ORS 486.041 (2), ORS 486.041 (6); and

Second, requiring the Division to litigate facts in an administrative hearing to sort out the handful of drivers about whom it could truly be said there is no reasonable possibility they were at fault in any degree would be an unreasonable burden on the Division. In other words, since the legislature could have constitutionally cast a very large net that would have subjected some drivers to the proof-of-future-responsibility requirement even though it was subsequently established they were not at fault, then we believe the legislature can cast a net which requires all uninsured drivers involved in moving accidents to purchase insurance.

## II

■■ Petitioners further contend the Financial Responsibility Law is unconstitutional because they are financially unable to purchase insurance and thus the Law discriminates against their indigency. Petitioners invoke due process concepts, equal protection concepts, and "the constitutional right to travel" in support of this contention.

We consider petitioners' arguments to be frivolous. There is no constitutional right for anyone to operate an automobile without insurance, that is, without the ability to pay for the damages that he may cause, once he, by his own conduct, has indicated he is more likely to cause future accidents. The Division correctly determined that indigency is irrelevant in administering the Financial Responsibility Law.

Affirmed.

FORT, J., concurring.

I agree that the decision of the Oregon Supreme Court in *Ortwein v. Schwab,* 262 Or 375, 498 P2d 757 (1972), and its construction of *Boddie v. Connecticut,* 401 US 371, 91 S Ct 780, 28 L Ed 2d 113 (1971), is, as the court here points out, controlling on the due process contentions here urged.

Concerning the Equal Protection claim, the Oregon Supreme Court in *Ortwein* considered *Weber v. Aetna Casualty & Surety Co.,* 406 US 164, 92 S Ct 1400, 31 L Ed 2d 768 (1972).[1]

---

[1] *See also,* Eisenstadt v. Baird, 405 US 438, 92 S Ct 1029, 31 L Ed 2d 349 (1972); Stanley v. Illinois, 405 US 645, 92 S Ct 1208, 31 L Ed 2d 551 (1972).

In *Weber* the United States Supreme Court defined the requisite tests as follows:

"\* \* \* The tests to determine the validity of state statutes under the Equal Protection Clause have been variously expressed, but this Court requires, at a minimum, that a statutory classification bear some rational relationship to a legitimate state purpose. \* \* \* The essential inquiry in all the foregoing cases is, however, inevitably a dual one: What legitimate state interest does the classification promote? What fundamental personal rights might the classification endanger?" 406 US at 173, 31 L Ed 2d at 777.

That court, in applying those tests to a statute which cut off the rights of unacknowledged illegitimate children to workmen's compensation benefits in some but not all circumstances, said:

"\* \* \* [I]mposing disabilities on the illegitimate child is contrary to the basic concept of our system that *legal burdens should bear some relationship to individual responsibility or wrongdoing.* \* \* \*" (Emphasis supplied.) 406 US at 175, 31 L Ed 2d at 779.

Accordingly, it struck down the statute.

By analogy to that test of *Weber,* the question here may be stated: Is imposing disabilities on the faultless and the indigent contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing?

Respondent here concedes that there may have been a total absence of wrongdoing upon the part of any of petitioners here. He also concedes that certain of the petitioners are indigent. He does not contend such condition is the result either of wrongdoing or

lack of individual responsibility in the indigent petitioners. No claim was made in *Ortwein* that the indigency of the state welfare recipients including payments made as aid to dependent children reflected either wrongdoing or lack of individual responsibility.

The Oregon Supreme Court in *Ortwein* held:

"* * * Using the phraseology of the United States Supreme Court, we are of the opinion that the right to obtain judicial review of a ruling of the State Welfare Division is not such a 'fundamental personal right' that it is in violation of the Equal Protection Clause to make such right dependent upon the ability to pay a $25 filing fee. Weber v. Aetna Casualty & Surety Company, 406 US 164, 92 S Ct 1400, 31 L Ed2d 768 (1972)." 262 Or at 383-84.

If, as the court in *Ortwein* holds, to deny an otherwise existing right of appeal to a welfare recipient, or child beneficiary thereof, because of indigency is not in violation of the Equal Protection Clause, whether viewed in the context of "a fundamental personal right" or that of a valid classification, clearly the statute here challenged is not.

Therefore, in the light of *Ortwein,* I conclude we are required to hold that the Equal Protection argument here must also fail.