**Celestino V. RIVAS et al., Plaintiffs,**

**v.**

**Robert C. COZENS et al., Defendants.**

**No. 70 2554.**

United States District Court,
N. D. California.

May 6, 1971.

Dennis R. Powell, Maurice R. Jourdane, David H. Kirkpatrick, Richard A. Gonzales, Neil M. Levy, California Rural Legal Assn., Salinas, Cal., for plaintiffs.

Thomas C. Lynch, Atty. Gen. and Victor D. Donenberg, Deputy Atty. Gen., San Francisco, Cal., for defendants.

Before HAMLIN, Circuit Judge and SWEIGERT and CONTI, District Judges.

## MEMORANDUM OF DECISION

PER CURIAM.

Plaintiffs, who had been involved in an automobile accident and whose driving privileges were thereafter suspended under the California Financial Responsibility Law (Cal. Vehicle Code, § 16000 et seq.) pending their deposit of cash security amounts fixed by the Department of Motor Vehicles, bring this suit under Civil Rights Act, 42 U.S.C. § 1983, to challenge the constitutionality of the California statute under which the Department acted.

For this reason, a three judge court was convoked as required by 28 U.S.C. §§ 2281 and 2284.

The California Financial Responsibility Law, Vehicle Code, § 16000 et seq., amended 1967, requires that the driver of every motor vehicle which is in any manner involved in an accident originating from the operation of a motor vehicle on any street or highway which accident has resulted in damage to the property of any one person in excess of $200 or in bodily injury or in the death of any person, shall within fifteen (15) days after the accident report the accident on a form approved by the Department to the office of the Department.

Unless the driver involved in an accident described in § 16000 complies with one of the conditions of exemption specified in § 16050 (not applicable in this case because plaintiffs admit their inability to establish any of the available exemptions) the driver shall deposit security in a sum which shall be sufficient in the judgment of the Department to satisfy any final judgment in any amount for bodily injury or in excess of $200 for property damage resulting from such accident as may be recovered against such driver.

The Department determines the amount of security deposit upon the basis of reports or other evidence submitted to it but shall not require a deposit of security for the benefit of any person when evidence has not been submitted by such person within fifty (50) days following the date of the accident.

Whenever a driver has failed within fifty (50) days after an accident to establish his exemption from security and has failed to deposit security within ten (10) days after notice by the Department specifying the amount of security, the Department shall suspend the privilege of the driver to drive a motor vehicle. The suspension becomes effective not later than the seventy-sixth (76) day after receipt of the accident report by the Department.

Plaintiffs contend (1) that insofar as the statute denies a prior hearing before suspension, it deprives the suspended driver of the procedural due process of law required by the Fourteenth Amendment; (2) that, since, according to plaintiffs, all other drivers faced with suspension of their driving privileges are afforded prior hearings, the statute, insofar as it denies a prior hearing to uninsured motorists, discriminates against uninsured motorists as a class and thereby deprives them of equal protection of the law in violation of the Fourteenth Amendment; (3) that insofar as the statute results in the suspension of driving privileges for failure to deposit security, it discriminates against poor persons as a class and thereby deprives them of equal protection of the law.

In support of their due process contentions plaintiffs cite and rely on such Supreme Court cases as Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), holding that a welfare recipient is entitled to a prior hearing before benefits can be terminated and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), holding unconstitutional a statute permitting garnishment of a debtor's wages prior to judgment; also such similar rulings as La Prease v. Raymours Furniture Co., 315 F.Supp. 716 (N.D.N.Y.1970), holding unconstitutional a New York statute permitting pre-hearing seizures of property by creditors; Klim v. Jones, 315 F.Supp. 109 (N.D.Cal.1970) holding invalid the California innkeepers lien; Davis v. Toledo Metropolitan Housing Authority, 311 F.Supp. 795 (N.D.Ohio 1970), enjoining a housing authority from refusing a hearing to a person concerning his eligibility for public housing; Harrell v. Harder (D.C.Conn.1970), enjoining suspension of food stamp privileges without a prior hearing; Java v. California Dept. of Human Resources Development, 317 F.Supp. 875 (N.D.Cal.1970), invalidating revocation of unemployment insurance benefits without a prior hearing; Doyle v. Finch (D.C.Texas 1970), holding invalid a termination of social security benefits without a public hearing.

As more specifically applicable the pending case, plaintiffs cite and rely on People v. Nothaus, 147 Colo. 210, 363 P.2d 180 (1961), declaring the Colorado Financial Responsibility Law unconstitutional insofar as it permitted suspension of driving privileges without an opportunity to be heard; Miller v. DePuy, 307 F.Supp. 166 (E.D.Pa.1969), declaring the Pennsylvania Financial Responsibility Law unconstitutional upon the same ground; Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136 (1963), upholding the Arizona Financial Responsibility Law but only with the proviso that there is an implication in the statute that, if requested, an aggrieved person shall have an administrative hearing before the suspension becomes effective; also Williams v. Sills, 55 N.J. 178, 260 A.2d 505 (1970) upholding the New Jersey Financial Responsibility Law with the same proviso.

On the other hand, defendants, represented by California's Attorney General, cite and rely on cases upholding validity of similar financial responsibility laws notwithstanding absence of provision for a hearing prior to suspension of license, e. g., Escobedo v. State of California, etc., 35 Cal.2d 870, 222 P.2d 1 (1950); Orr v. Superior Court, 71 Cal.2d 220, 77 Cal.Rptr. 816, 454 P.2d 712 (1950).; Latham v. Tynan, 435 F.2d 1248 (2d Cir. 1970); Trujillo v. DeBaca, 320 F.Supp. 1038 (D.C.N.M., 1970); Llamas v. Department of Transportation, etc., 320 F.Supp. 1041 (E.D.Wis.1969).

The Supreme Court of California in Escobedo v. State of California, etc., supra, upheld the constitutionality of the suspension provision of the State's Financial Responsibility Law against the challenge that there was no provision for prior hearing, holding that the statute did not violate due process in that respect because such a suspension would be reasonably justified by a compelling public interest; that such interest appeared from the obvious carelessness and financial irresponsibility of such a substantial number of drivers that to require a hearing in every case, before suspension of a license, would substantially burden and delay, if not defeat, the operation of the law.

The Supreme Court of California in Orr v. Superior Court, supra, construing its previous decision in *Escobedo*, supra, has further interpreted the California Financial Responsibility Law as meaning that, before ordering suspension of the license of a driver involved in an accident, the Department must determine whether there is a reasonable possibility that a judgment may be recovered against the driver and so must consider culpability; that the Department should find no particular difficulty in determining from accident reports, which involved drivers are obligated to make

(Section 16000), and from other evidence submitted to it (Section 16020) whether there is a reasonable possibility that a judgment may be recovered against the driver based on his possible culpability; that the Department need not decide as between conflicting versions of the accident but only whether there is any credible evidence on the basis of which, if believed by a trier of fact, the driver could reasonably be considered culpable; that, further, an order suspending a license is subject to a court review to determine whether the evidence before the Department supports its implied finding that there is reasonable possibility that a judgment for damages will be rendered against the driver.

Latham v. Tynan, supra, dealing with the precise question here presented, goes to the extent of holding that due process and equal protection claims similar to those of plaintiffs here do not present even a substantial enough constitutional question to have required three judges at the District Court level.

Trujillo v. DeBaca, supra, a three judge district court, distinguishing Goldberg v. Kelly and Sniadach v. Family Finance Corp., held that there was no merit to claims similar to those presented in our pending case.

In Llamas v. Department of Transportation, etc., a three judge district court, citing Escobedo v. State of California, etc., supra, held that there was no merit to the due process argument because the statute there, although authorizing suspension without a hearing, did provide, (as the California statute has been held in Orr v. Superior Court to provide) for a judicial review after suspension, and, further, because there was adequate and compelling need for dispensing with pre-suspension hearings that might obstruct the purposes of the statute; further, that there was no merit to the equal protection claims because the classification is obviously reasonable.

So far as the present state of the law on the pending issue is concerned, we note that two of the cases, relied on by plaintiffs as holding Financial Responsibility Laws invalid for lack of pre-suspension hearing, do not really support plaintiff's arguments.

Williams v. Sills, supra, expressly accepts the California cases of Escobedo v. State of California, etc., supra and Orr v. Superior Court, supra, differing from these cases only in the respect that the court in Williams v. Sills seems to have interpreted the New Jersey Financial Responsibility Law as requiring an administrative hearing prior to suspension.

On this point, however, the Chief Justice, concurring said (260 A.2d p. 510): "I do not quarrel with an interpretation of the statute which calls for an administrative hearing in which the critical consideration will be the absence of a possibility of fault, but I have no doubt the Legislature need not provide for that inquiry."

It appears, therefore, the ruling in *Williams* was based upon grounds of legislative intent rather than any constitutional requirement for a pre-suspension administrative hearing.

Miller v. DePuy, supra, is quite distinguishable from our pending case. There the district judge considered a revocation of driver license for non-payment of a motor vehicle accident judgment rendered against the owner of a truck upon respondeat superior grounds. The suspension was held to deprive the owner, who had been meanwhile discharged in bankruptcy from the judgment, of due process because the statute there (unlike the California statute as construed in *Orr*, supra), made no provision for judicial review and for the further reason that the suspension involved the driving rights, not of the driver involved in the accident, but of a non-driving owner against whom the judgment was rendered, not for any personal negligence, but vicariously upon the theory of respondeat superior. The court noted this as a "crucial" distinction from such cases as Kesler v. Department of Public Safety, etc., 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962) upholding Utah's Financial Responsibility Law as serving

valid state rights, and Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1951) upholding New York's Financial Responsibility Law against due process arguments.

So far as we can find, the Colorado case of People v. Nothaus, supra, is the only case which unqualifiedly holds unconstitutional on grounds of due process a financial responsibility law comparable to California's and those of other states in which constitutionality has been upheld.

The weight of authority, therefore, seems to support the constitutionality of the statute as against the argument of procedural due process.

Plaintiffs contend, however, that cases upholding suspension of license without prior hearing have not considered the case progeny following Goldberg v. Kelly, supra, and Sniadach v. Family Finance Corp., supra, and teaching generally that a due process hearing must be afforded prior to the deprivation of any basic right.

█ It is true that freedom to make use of a motor vehicle as a means of getting about from place to place, whether in pursuit of business or pleasure, is a liberty which under the Fourteenth Amendment cannot be denied or curtailed by a state without due process of law. (See, Wall v. King, 206 F.2d 878, 882 (1st Cir. 1953).

We are of the opinion, however, for reasons hereinafter set forth that, although no provision is made in the California statute for a personal, oral hearing of the kind held necessary in Goldberg v. Kelly, supra, due process for the suspension of driver privilege under the statute, as interpreted by the Supreme Court of California, is sufficiently provided.

It will be noted that under the California Financial Responsibility Law all parties involved in the accident file reports containing all the evidence they have in support of their respective versions of the accident. The Department then evaluates this evidentiary material, not to determine the ultimate question of culpability, but only to determine whether there is a reasonable possibility of a judgment being rendered against any of the parties. Orr v. Superior Court, supra. If a driver is not exempt, the Department then fixes and requires the deposit of security. Vehicle Code, § 16020. Under Vehicle Code, § 16084 the Department may modify its determination of the amount of the deposit upon receiving information that the original determination was excessive.

In other words, an opportunity is given to each party to present evidence on the only issues involved, i.e., (1) whether the party was involved in the traffic accident; (2) whether the party comes within any of the exemptions; (3) whether there is a reasonable possibility that a judgment may be rendered against a party, and (4) the amount of security.

Since the ultimate question of culpability is not involved there is no need to provide for a further, full scale oral hearing for the parties to administratively litigate that issue.

We also note that it has been held by the California courts that a person so required to deposit security has a right to judicial review of the question whether reasonable possibility of rendition of a judgment against him has been shown. Orr v. Superior Court, supra.

The question, then, is really whether the state can require drivers to carry insurance or post security as a condition of the driver privilege without regard to culpability and without any hearing beyond the hearing permitted by the California law.

█ It has been long established that financial responsibility can be required of all drivers by requiring compulsory insurance or compulsory security deposit as a condition to issuance of a driver's license. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Ortiz v. DePuy, 313 F.Supp. 156, 158 (E.D. Pa.1970); Perez v. Tynan, 307 F.Supp. 1235 (D.C.Conn.1969).

The purpose of financial responsibility statutes of the kind here in question is not solely, as plaintiffs seem to believe, the discouragement of negligent, reckless or otherwise illegal operation of automobiles. Rather, the further, particular and overriding purpose of financial responsibility laws is to protect, so far as the state deems practicable, persons who have been injured in their person or property by negligent, uninsured, indigent drivers, against the injustice and frustration of an uncollectible "empty" judgment obtained against such a driver. Perez v. Campbell, infra; Perez v. Tynan, supra; Schecter v. Killingsworth, supra; Williams v. Sills, supra.

Faced with the problem of assuring maximum protection against such loss and at the same time keeping interference with freedom of movement at a minimum, many legislatures have tipped the balance in favor of freedom of movement by preferring financial responsibility laws of the kind here in question over compulsory insurance laws in the expectation that the former will sufficiently incline drivers to either operate their automobiles safely or establish financial responsibility through insurance, or otherwise, or hopefully, both. See, Perez v. Tynan, supra.

In passing upon the validity of this kind of financial responsibility legislation, the courts have reasoned that, since compulsory insurance or security laws can validly limit the driving privilege even before the question of fault ever arises and, therefore, without any administrative or other hearing, it follows that the state may validly enact the less drastic form of such legislation, i.e., legislation providing that, although a driver may initially take the road without insurance or any showing of financial responsibility, his right to drive may be suspended if, remaining uninsured, he becomes involved in an accident and then fails to assure financial responsibility—without any determination of fault and without any administrative hearing —just as would have been his situation if the state had enacted the more drastic

compulsory form of financial responsibility statute.

It is quite obvious, however, that any provision for personal, oral hearings in connection with every accident involving an uninsured driver would, as stated in Escobedo v. State of California, etc., supra, substantially burden and delay, if not defeat, the operation of the kind of financial responsibility law here in question.

■ Having in mind the public purpose of the statute, the very simple and narrow issues involved and the burdening or defeating effect of any such provision, we conclude that due process does not require any further or different kind of hearing than is now available under the California statute.

## DISCRIMINATION AGAINST POOR PERSONS

■ We find no merit in plaintiff's contention that the Financial Responsibility Law discriminates against poor persons who have insufficient funds to procure insurance coverage or make security deposits.

The victim of a negligent, uninsured, indigent driver may be and often is, himself, financially unable to bear the losses inflicted upon him. In this view of the matter the poor person, far from being discriminated against, needs the protection of a financial responsibility law more than a well-to-do person.

Considering the matter from another point of view, the requirement for insurance or deposit as a condition for driving does not deprive a poor person from the use of the road any more than lack of funds to acquire an automobile in the first place or for the purchase of gasoline would so preclude such enjoyment.

Further, by comparison with compulsory insurance statutes, financial responsibility laws of the kind here in question, favor poor, uninsured motorists by permitting them the privilege of the road at least until they become involved in an accident, and even then, until there is evidence indicating a reasonable possibility

of a judgment being rendered against them.

Upon these considerations of public interest, the courts have held that financial responsibility laws do not discriminate against the poor. See, Escobedo v. State of California, etc., 35 Cal.2d 870, 222 P.2d 1, 6 (1950); Perez v. Tynan, supra; Perez v. Campbell, 421 F.2d 619, 622 (9th Cir.1970).

## DISCRIMINATION IN CERTAIN RESPECTS BETWEEN INSURED AND UNINSURED DRIVERS

Plaintiffs contend that the statute denies to an uninsured motorist an opportunity to be heard prior to suspension while other motorists, faced with the possibility of suspension or revocation upon conviction of certain traffic offenses, are afforded such administrative hearings.

Plaintiffs cite Vehicle Code, §§ 13350, 13352 and 13950.

It is hard to understand how plaintiff can make this argument; California law is otherwise. It expressly provides that no such administrative hearing is required where suspension is mandatory (Vehicle Code, § 14101(a)); under both Sections 13350 and 13352 suspension of license after conviction is mandatory. Therefore, no administrative hearing is required. Hough v. McCarthy, 54 Cal.2d 273, 5 Cal.Rptr. 668, 353 P.2d 276 (1960); Cook v. Bright, 208 Cal.App.2d 98, 25 Cal.Rptr. 116 (1962).

It is, of course, true that an insured driver, who is charged with a traffic violation, is entitled to court adjudication of his guilt before becoming subject to administrative suspension. The reason, however, for deferring administrative license suspension in his case until after conviction is that he has already established his financial responsibility for meeting possible civil claims against him —while the uninsured driver, similarly charged and similarly entitled to court adjudication, has not established any such financial responsibility.

 We find no merit in plaintiff's challenge on this ground to what appears to be a necessary and reasonable distinction in this respect between insured and uninsured drivers charged with traffic offenses.

For the foregoing reasons we conclude that plaintiff's motion for a preliminary injunction enjoining defendants from enforcing the provisions of the California Financial Responsibility Law against plaintiffs and declaring said statute unconstitutional should be and is hereby denied and, further, that the temporary restraining order issued herein under date of December 2, 1970, be and the same is hereby dissolved.