Larry **WARNER** and Ray Slaseman, On Behalf of Themselves and All Others Similarly Situated,

v.

J. A. **TROMBETTA**, Director, Pennsylvania Bureau of Traffic Safety et al.

Civ. No. 71–438.

United States District Court, M. D. Pennsylvania.

July 6, 1972.

Alan N. Linder and Donald B. Swope, Tri-County Legal Services, York, Pa., for plaintiffs.

J. Shane Creamer, Atty. Gen., Elmer T. Bolla, Deputy Atty. Gen., Anthony J. Maiorana, Asst. Atty. Gen., Dept. of Transportation, Harrisburg, Pa., for defendants.

Before HUNTER, Circuit Judge, and NEALON and HERMAN, District Judges.

## MEMORANDUM

NEALON, District Judge.

Plaintiffs have initiated this class action on behalf of themselves and all others similarily situated[1] seeking injunctive relief and the convening of a three-judge court to declare Sections 616 (a)(3) and 1417(b) of the Pennsylvania Motor Vehicle Code unconstitutional in that they are violative of the due process and equal protection clauses of the Fourteenth Amendment. The Court being satisfied that the necessary jurisdictional prerequisites had been met, this statutory three-judge court was convened under 28 U.S.C. § 2281. Bailey v. Patterson, 369 U.S. 31, 82 S. Ct. 549, 7 L.Ed.2d 512 (1960); Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

Plaintiffs' attack on § 616(a)(3)[2] is centered on its requirement that the Secretary of the Department of Transportation, upon proof of conviction that a motorist has violated Section 1027 of the Motor Vehicle Code, to wit: leaving the scene of an accident or failing to identify oneself at the scene of the accident,[3] must automatically revoke the

---

1. The parties have entered into a stipulation which the court has approved that the action is properly maintainable as a class action. Rule 23(b)(2) Fed. R.Civ.P. The class is composed of those persons who have violated § 1027 of the Pennsylvania Motor Vehicle Code Act of April 29, 1959, P.L. 58, § 1027, 75 P.S. § 1027, and whose operators' licenses have been revoked or are subject to immediate revocation pursuant to the authority of § 616(a)(3) of the Pennsylvania Motor Vehicle Code, specifically the Act of April 29, 1959, P.L. 58, § 616, Act of December 17, 1969, P.L. 376, § 1, 75 P.S. § 616(a)(3), and who are unable or will be unable to furnish proof of financial responsibility following the termination of their one-year license revocation, as required by § 1417(b) of the Pennsylvania Motor Vehicle Code, specifically the Act of April 29, 1959, P.L. 58, § 1417, 75 P.S. § 1417(b).

2. 75 Pa.Stat.Annot. § 616 provides in pertinent part:

   "(a) Upon receiving a certified record, from the clerk of the court, of proceedings in which a person pleaded guilty, entered a plea of nolo contendere, or was found guilty by a judge or jury, of any of the crimes enumerated in this section, the secretary shall forthwith revoke, for a period of one (1) year from the date of revocation, the operating privilege of any such person: . . . Bases requiring such certification follow:

   .    .    .    .    .

   (3) Conviction of any operator of a motor vehicle or tractor involved in an accident, resulting in injury or death to any person or damage to property, upon the charge of failing to stop and render assistance or disclose his identity at the scene of the accident."

3. 75 Pa.Stat.Annot. § 1027.

motorist's license for the period of one year. Plaintiffs claim that this procedure of mandatory revocation without a prior administrative hearing or opportunity to appeal [4] violates the due process requirements announced by the Supreme Court in Bell v. Burson, 402 U. S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Further, they maintain that 75 P.S. § 1417(b), which provides that any license that has been suspended or revoked by the Secretary pursuant to § 616(a)(3) shall remain suspended or revoked until the motorist furnishes proof of financial responsibility, denies plaintiffs equal protection of the laws in that it discriminates against indigents.[5]

The Stipulation of Facts entered into between the parties reveals that on February 24, 1970 plaintiff Larry Warner pled guilty to violating § 1027(b) of the Motor Vehicle Code for failing to stop and disclose his identity at the scene of an accident in which he was involved. Pursuant to § 616(a)(3), defendant revoked Warner's license on July 17, 1970 for a period of one year, said period expiring on July 17, 1971. Although the revocation period has expired, since Warner is financially unable to afford insurance or post security, his license has not as yet been reinstated. He claims that he has been irreparably harmed by the revocation in that he is a professional truckdriver and, therefore, has been deprived of his livelihood. As relief, plaintiff Warner requests an order directing the defendants to restore his operating license without requiring proof of financial responsibility. Plaintiff Slaseman, also an indigent, pled guilty to the same offense on August 17, 1970, and on May 27, 1971 his operator's license was revoked by defendants for a period of one year. Since the revocation period has not expired, plaintiff Slaseman requests the court to direct defendants to hold an administrative hearing on the issue of plaintiff's license revocation and to require defendants to reinstate his license without proof of financial responsibility.

In support of their due process contentions, plaintiffs rely on the recent Supreme Court case of Bell v. Burson, *supra* as controlling and assert that its holding precludes Pennsylvania from revoking their drivers' licenses under § 616(a)(3) without providing a prior administrative hearing that meets the requirements of due process. In *Bell*, the Supreme Court recognized that a driver's license, whether labeled as a

4. Although the statute is silent as to the right of appeal, the Pennsylvania Supreme Court has interpreted the section as prohibiting any review. Brennan's Appeal, 344 Pa. 209, 25 A.2d 155 (1942). However, the decision in *Brennan* predates Article V, Section 9 of the Commonwealth's Constitution, P.S., adopted April 23, 1968, which provides that:

"[t]here shall be a right of appeal in all cases to a court of record . . . and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law."

It also predates an amendment to the Administrative Agency Act of June 4, 1945, 71 P.S. § 1710.47 enacted pursuant to Article V, Section 9 of the Constitution which the Commonwealth Court in Dept. of Trans. v. Hosek, 3 Pa.Cmwlth.

580, 284 A.2d 524 (1971) interpreted as providing for the right of appeal from a license revocation to the court of common pleas of the county in which the operator resides.

5. 75 Pa.Stat. § 1417 Annot. provides in part:

"(a) Whenever the secretary, under any law of this State, suspends or revokes the license of any person upon receiving record of a conviction of a forfeiture of bail . . .

(b) Such license and registration shall remain suspended or revoked and shall not at any time thereafter be renewed, nor shall any license be thereafter issued to such person, nor shall any motor vehicle be thereafter registered in the name of such person until permitted under the provisions of this act pertinent thereto and not then, unless and until he shall give and thereafter maintain proof of financial responsibility."

"right" or a "privilege", creates an interest which is important to a licensee and, once issued, its continued possession may become essential to the pursuit of a livelihood. Accordingly, the Court held that where the statute is fault oriented, before a State may suspend the license of an uninsured motorist for failure to show proof of financial responsibility, it must provide a prior hearing on the question of his potential fault or liability. *Id* at 542, 91 S.Ct. 1586. *See also* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

■ However, the Commonwealth contends that *Bell* is not controlling here because Pennsylvania's statutory scheme is significantly different from the statute considered in *Bell*. It argues that since Georgia's Motor Vehicle Safety Responsibility Act made fault for the accident an important factor in the State's decision to suspend an individual's operating license, a prior hearing on this issue was necessary to satisfy the essentials of due process. Bell v. Burson, *supra* at 541, 91 S.Ct. 1586. In contrast, the Commonwealth contends that because fault for the accident is irrelevant to the Pennsylvania scheme and that any motorist who violates § 1027(b) is charged with notice that his license will be revoked regardless of culpability, a hearing prior to revocation would serve no valid purpose other than requiring the Commonwealth to prove that his conviction record was properly made, a ministerial act which should not be necessary. *Cf.* Stauffer v. Weedlun, 188 Neb. 105, 195 N.W.2d 218 (1972). However, this very argument was raised and rejected recently in Reese v. Kassab, 334 F.Supp. 744 (W.D. Pa.1971) where a three-judge district court held that the procedure under Pennsylvania's "Point System" Act providing for the suspension of a driver's license without a prior administrative hearing violated the requirements of procedural due process as set down in

*Bell*. Reese v. Kassab, 334 F.Supp. *supra* at 745. There, the court pointed out

> "that even if the convictions cannot be contested, there still remain the possibilities, among others, that the convictions were those of another person with the same name; that the fines and costs were paid on an information at variance with that for which the minor judiciary entered a conviction as plaintiff contends occurred in this case; . . . or that there were errors on the report of conviction form. In none of these instances is there a provision for a hearing before suspension even though notice of the assessment of points is given. Notice without opportunity to rectify error obviously is not sufficient."

*Id.* at 747.

This same reasoning applies with equal force to the instant case. The fatal defect in the statute at bar is that there is no provision made for any type of administrative hearing with notice and an opportunity to be heard before the revocation action becomes effective. Hence, the possibility exists that error in a conviction record could result in the revocation of the license of an innocent motorist. Under these circumstances, we conclude that the essentials of due process require the opportunity for some sort of meaningful administrative hearing prior to the revocation of an operator's license.

However, contrary to what plaintiffs contend, there will be no necessity to make a determination of fault for the accident at the hearing, for as stated earlier, under § 616(a)(3) license revocation is based not on responsibility for causing the accident, but on irresponsible activity after involvement in an accident. Certainly, it is a valid exercise of the state's police power to revoke the license of a motorist who has been convicted of leaving the scene of an accident in which he was involved, whether or not he was responsible for causing the accident. Such a revocation is a

reasonable means of advancing the state's legitimate interest of protecting the public from those who have demonstrated by their conduct that their driving presents a hazard to life and property. Consequently, while the Secretary may justifiably conclude that a convicted defendant has, in fact, committed the crime, nevertheless, due process would require the availability of a hearing at which a motorist would have the opportunity to correct any error in the Secretary's record of conviction.[6]

Next, plaintiffs contend that § 1417(b), which requires proof of financial responsibility before a license revoked pursuant to § 616(a)(3) may be reinstated, unlawfully discriminates against low income licensees who do not have sufficient funds to procure insurance coverage or make security deposits. They concede that Pennsylvania may have required all motorists to carry liability insurance or post security as a pre-condition to the issuance of a license. Bell v. Burson, *supra*; Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927). However, they argue that where no such requirement was made by Pennsylvania initially, to selectively require it only of those whose licenses were suspended or revoked is an unreasonable classification in violation of the equal protection of the laws. With this contention we do not agree. If Pennsylvania may legitimately demand such a requirement before the issuance of a license or vehicle registration, the requirement becomes no less valid or reasonable if Pennsylvania elects to enact a less drastic form of legislation, i. e. the requiring of proof of financial responsibility from an uninsured motorist who has demonstrated a lack of judgment and public responsibility by failing to stop and identify himself at the scene of an accident in which he was involved. *See* MacQuarrie v. McLaughlin, 294 F.Supp. 176 (D.Mass.1968), aff'd. 394 U.S. 456, 89 S.Ct. 1224, 22 L.Ed.2d 417 (1969). *See also*, Latham v. Tynan, 435 F.2d 1248 (2d Cir. 1970); Perez v. Campbell, 421 F.2d 619 (9th Cir. 1970); Rivas v. Cozens, 327 F.Supp. 867 (N.D. Cal.1971); Escobedo v. State of California, Department of Motor Vehicles, 222 P.2d 1, 35 Cal.2d 870 (1970). The purpose behind such legislation is not to punish the convicted driver, but to protect others on the highways by giving them some assurance that all drivers on the road will be able to pay for their accidents.[7] Indeed, Pennsylvania's scheme favors the poor by allowing every motorist to drive without any showing of financial responsibility at least until

---

6. The Commonwealth's further argument that the due process requirements of *Bell* have been satisfied because § 616(a)(3) has been recently construed by the Commonwealth Court as providing for an appeal from a revocation order is also without merit. *See* Dept. of Trans. v. Hosek, *supra*. An appeal subsequent to the revocation order falls short of what *Bell* requires since there it was emphasized that due process requires " '. . . notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." Bell v. Burson, 402 U.S. *supra* at 542, 91 S.Ct. at 1591.

7. In this regard, a three-judge court sitting in the U. S. District Court of Vermont recently upheld the constitutional validity of a Vermont statute that required a person convicted of operating a motor vehicle without the owner's consent to furnish proof of financial responsibility as a condition precedent to obtaining an operator's license. Miller v. Malloy, 343 F.Supp. 46 (D.C.Vt., 1972). The court held (a) that financial responsibility laws are a proper implementation of the State's legitimate interest in protecting its highway users; (b) that protection is accomplished by ensuring that persons who have demonstrated a careless or criminal attitude toward the rights of other users of the highway will not be permitted in the future to subject members of the public to incompensable injury; (c) that it is entirely rational to conclude that persons convicted of certain motor vehicle crimes lack proper concern for the property and personal rights of others; and (d) the State's interest in affording protection to the public is so substantial as to justify precluding such offenders from obtaining a license to drive.

he has demonstrated by his conduct that he poses a potential threat to other users of the highways.

Moreover, as pointed out in *Rivas, supra,* the victim of such irresponsible drivers often is himself financially unable to bear the costs of the damages inflicted on him. In this regard, far from being discriminated against, a poor person needs the protection of a financial responsibility law far more than an affluent person. Rivas v. Cozens *supra* at 872. Thus viewed, § 1417(b) does not unconstitutionally discriminate against the poor.

The parties are requested to submit an appropriate order.

HERMAN, District Judge:

I concur with that part of my colleagues' opinion which concerns the lack of due process when an operator's license is revoked upon conviction of a violation of § 616(a)(3) of the Motor Vehicle Code (75 P.S. § 616(a)(3)) without affording the operator a prior administrative hearing or an opportunity to appeal. I cannot, however, agree with the second part of the opinion which finds no denial of the equal protection of the law in requiring proof of financial responsibility before the operator's privilege may be reinstated when the offense for which the operator's driving privilege was revoked was failing to stop and render assistance or to disclose his identity at the scene of an accident (75 P.S. § 616 (a)(3)).

Both named plaintiffs require driver's licenses for employment and without them both are presently necessarily receiving public assistance for themselves and their families. Both had valid Pennsylvania driver's licenses prior to the offense to which they plead guilty without benefit of counsel. Both, of course, are irreparably harmed.

It seems to me that Section 1417(b) requiring the maintenance of proof of financial responsibility after the one year period of revocation in this case is a denial of the equal protection of the law and to that extent should be declared unconstitutional. It is true, as the majority points out, a state could require all motorists before driving privileges are granted to carry liability insurance, but Pennsylvania having failed to do so cannot require it of a class unless there is a reasonable and rational classification in establishing the class involved (here, operators who have left the scene of an accident or failed to disclose their identity).[1] Not only is there an absence of finding of fault for the accident or even of a *probability* or *possibility* of fault on the part of the plaintiffs herein, but there is no suggestion that *anyone* was at fault nor even that any party to the accident is claiming any damages whatsoever.

The cases cited by the majority in support of their reasoning that there is no denial of equal protection, for the most part relate to situations in which judgments have been secured for damages resulting from the accident or there is a real possibility that judgments might be obtained. To me, these are clearly distinguishable from the case at bar.

---

1. In this regard it is interesting to note the language of Mr. Justice Brennan in Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971): "If the statute barred the issuance of licenses to all motorists who did not carry liability insurance or who did not post security, the statute would not, under our cases, violate the Fourteenth Amendment (citing cases). It does not follow, however, that the amendment also permits the . . . statutory scheme where not all motorists, but rather only motorists involved in accidents, are required to post security under penalty of loss of the licenses (citing cases). Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. (citing cases) . . . ."

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires that a classification established by a legislature bear a just and proper relation to the purpose for which it is made. In Morey v. Doud, 354 U.S. 457, 465, 77 S.Ct. 1344, 1350, 1 L.Ed.2d 1485 (1957), the Court held that, "statutory discrimination must be based on differences that are reasonably related to the purposes of the Act in which it is found." *See also*, Smith v. Cahoon, 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264 (1931).

The obvious legislative purpose of the Pennsylvania Motor Vehicle Code, Article XIV, "Motor Vehicle Safety Responsibility Provisions" (75 P.S. § 1401 et seq.), is of course a most laudable one; that is, safety on the highway and protection of the traveling public from negligent drivers likely to inflict injury or damages on other users of the highways. But, as Chief Judge Robson said in his dissent in Pollion v. Lewis, 320 F.Supp. 1343, 1356 (N.D.Ill. 1970), vacated and remanded, 403 U.S. 902, 91 S.Ct. 2212, 29 L.Ed.2d 678 on other grounds, "the method employed for singling out those persons who must bear an economic burden not common to the driving public, and who may thus be effectively prohibited from owning or driving automobiles, must be rationally related to the protection of the public from *irresponsible, negligent* motorists."[2]

True, each of these plaintiffs acted irresponsibly in leaving a scene of an accident in which he was involved or by failing to identify himself there (in both cases of course after the collision had occurred), and he was properly punished for this irresponsibility, but to me it does not seem to follow that this irresponsibility is in any way related to safety on the highway or protection of the traveling public from negligent drivers who might in the future inflict damage on other users of the highways.

In Miller v. Depuy, 307 F.Supp. 166 (E.D.Pa.1969), Judge Body found that § 1414 of the Financial Responsibility Act was unconstitutional as violating the Equal Protection Clause, and his reasoning there is equally persuasive in the instant case. Here, both named defendants who for all we know may be the most careful of drivers, and at least have not been shown to be unsafe drivers, will probably be deprived of their driving privileges, and perhaps thereby their means of livelihood for the rest of their lives by having been placed in a particular category by the legislature by the imposition of a restriction that cannot conceivably increase safety on the highway. Therefore, I respectfully dissent from this part of the majority opinion.