Leonard L. SHULTZ, Individually and on behalf of all others similarly situated, Plaintiff,

v.

Seymore G. HEYISON, Director, Pennsylvania Bureau of Traffic Safety, et al., Defendants.

Civ. No. 74–1176.

United States District Court, M. D. Pennsylvania.

Aug. 26, 1975.

Robert B. Wayne, Central Susquehanna Valley Legal Services, Bloomsburg, Pa., for plaintiff.

John L. Heaton, Asst. Atty. Gen., Pa. Dept. of Transp., Harrisburg, Pa., for defendants.

Before WEIS, Circuit Judge, and NEALON and MUIR, District Judges.

## OPINION

MUIR, District Judge.

This is an action challenging the constitutionality of the Pennsylvania Act of 1959, P.L. 58, §§ 1413 and 1414, as amended by the Act of 1967, P.L. 30, § 1, 75 P.S. 1413 and 1414.

Under § 1412 of the Act, it is the duty of the Prothonotary of any court in which a judgment resulting from the operation of a motor vehicle is rendered to forward to the Secretary of Revenue a certified copy of such judgment if it has not been satisfied within 60 days of its entry. Upon receipt of a certified copy of such judgment, the Secretary is required by § 1413 to suspend the license and registration of any operator or owner against whom the judgment was rendered.

The judgment debtor may obtain relief from § 1413 in several ways. He can pay the judgment. He can apply to the Court in which the judgment was rendered for permission to pay the judgment in install-ments. § 1416. With the consent of the judgment creditor, the Secretary may grant the debtor an additional period within which to satisfy the judgment if the debtor furnishes proof of financial responsibility for future judgments arising from automobile accidents. § 1413(b). The debtor can file with the Secretary evidence that a bond or insurance policy was in force at the time of the accident which led to the judgment. § 1413(c). He can receive a discharge in bankruptcy. See *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

If the judgment debtor is unable to do any of the foregoing, his suspension remains in effect until the judgment is satisfied and he gives proof of financial responsibility by filing with the Secretary a written certificate of any insurance carrier duly authorized to do business in the Commonwealth. § 1416.

Shultz contends, on behalf of himself and others similarly situated, that §§ 1413 and 1414 are invalid (a) because they violate the right to due process and equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution, (b) because they place a significant burden on the interstate commerce and, therefore, violate Article I, § 8 of the Constitution, and (c) because they conflict with the Garnishment Limitations Provision of the Consumer Credit Protection Act, 15 U.S.C. § 1671, et seq. and are consequently invalid under the Supremacy Clause, Article VI of the Constitution.

The parties have stipulated to the material facts. On January 1, 1971, Shultz was involved in an accident with a vehicle owned by Ruth N. Kreischer and operated by her husband, Guy Kreischer. In a civil action filed on January 8, 1973 in the Court of Common Pleas of Columbia County, Ruth Kreischer obtained a verdict in her favor against Shultz in the amount of $636.38 plus $30.00 in costs. More than 60 days thereafter, at the request of Kreischer's attorney, the Prothonotary of the Court of Common Pleas of Columbia County transmitted the judgment to the Bureau of

Traffic Safety in Harrisburg. On November 8, 1974, Shultz was notified that his automobile registration and operating privileges were suspended beginning December 9, 1974.

This action was filed on December 12, 1974. A temporary restraining order with respect to the suspension of Shultz's operator's license was entered on December 28, 1974. On December 30, 1974, the Defendants restored Shultz's license pending determination of his claim by this three-judge court. On May 19, 1975, the case was certified as a class action with Shultz as the representative for all persons holding Pennsylvania driver's licenses or who currently or in the future will have their driving entitlements indefinitely suspended because of non-payment of civil judgments arising out of an automobile accident. The Court will further limit the class to indigent individuals who fit the class description.

Prior to the suspension of his operating privileges, Shultz was primarily employed as an interstate truck driver. His income is low and variable and has been supplemented continuously since May, 1974 to the present by payments from the Department of Public Assistance. Also, he and his family have been receiving medical assistance and food stamps from the same Department since June, 1971. Receipt of that type of aid indicates that the Shultz family income is less than the minimum subsistence income level established by the Commonwealth of Pennsylvania.

Shultz is by reason of his financial condition unable to pay in a lump sum the judgment against him in favor of Ruth N. Kreischer. There is no indication as to his ability to make periodic payments. Shultz has been able to borrow enough money to acquire and has acquired insurance which would enable him to demonstrate that he is now "financially responsible" as required by the Act.

Shultz first contends that the challenged sections unlawfully discriminate against low-income judgment debtors who do not have sufficient funds to satisfy the judgments outstanding against them. Other three-judge courts have addressed similar attacks upon analogous statutory schemes and have rejected them. See *Young v. Cobb,* No. 72–2064–CIV–JE (S.D. Fla. 4/18/74), affirmed, *Young v. Cobb,* 419 U.S. 1098, 95 S.Ct. 768, 42 L.Ed.2d 795 (1975); *Ross v. Gunaris,* Civil No. 75–362–S (D.C.Mass. June 9, 1975); cf. *Warner v. Trombetta,* 348 F.Supp. 1068 (M.D.Pa.1972). This Court sees no reason to deviate from the reasoning in those cases.

It is undisputed that Pennsylvania may require all motorists to carry liability insurance or post security before they are issued operators' licenses. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Ex parte Poresky,* 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). If the Commonwealth may legitimately establish such a prerequisite to the issuance of a license, a less stringent requirement should *a fortiori* be valid. The challenged statutes afforded an indigent individual the opportunity of driving while uninsured.[1] As Judge Nealon, a signatory to this opinion, has noted, the former Pennsylvania scheme was less harsh on the poor than a statute requiring liability insurance before issuance of licenses in that it allowed them to drive without any showing of financial responsibility until they incurred a judgment which they were unable to pay. *Warner v. Trombetta, supra,* at p. 1072. This "one-bite" approach undoubtedly made it possible for many individuals who otherwise could not have afforded insurance to obtain driving privileges. Shultz appears to argue that since Pennsylvania had used this more lenient approach, it is forbidden to suspend his driving privileges for failure to satisfy a judgment despite the fact that he has demonstrated irresponsibility as a driver coupled with his inability to pay. That argument ignores the potential consequences to the victim of an accident caused by an

---

1. On July 19, 1975, a compulsory no-fault automobile insurance law went into effect in Pennsylvania.

individual who is financially irresponsible. Often the victim is himself unable to bear the costs of the damages which he has incurred by reason of the other's negligence. In such a case, a poor individual needs the protection of a financial responsibility law more than an affluent person and it can be argued that the statutes challenged here further that end. Cf. *Warner v. Trombetta, supra,* at 1073; see also *McKinney v. O'Malley,* 379 F.Supp. 135, 139 (M.D.Fla.1974). Thus, one of the purposes behind the sections in question is to protect persons using Commonwealth highways from any further financial hardships which may result from the use of motor vehicles by individuals who have demonstrated irresponsibility as drivers along with an inability to pay. In *Young v. Cobb, supra,* a Three-Judge District Court held valid just such a purpose and on appeal the United States Supreme Court summarily affirmed. *Young v. Cobb,* 419 U.S. 1098, 75 S.Ct. 768, 42 L.Ed. 795 (1975). We need not decide if this court is bound by that summary affirmance, *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), but we recognize that there is little, if anything, to distinguish this case from *Young.* On the merits, we hold that §§ 1413 and 1414 do not violate the Fourteenth Amendment.

■ The Court recognizes that §§ 1413 and 1414 have a greater impact on the poor than on those who can afford insurance or who are able, although uninsured, to satisfy in full judgments rendered against them. However, if such an impact were deemed a violation of the Fourteenth Amendment, then a state's imposition of measures, such as compulsory insurance, which has the effect of restricting operating privileges to those able to pay would be constitutionally infirm despite the fact that such measures have been approved by the Courts. Cf. *Ross v. Gunaris, supra,* at note 3; see *Bell v. Burson, supra,* 402 U.S. at 539, 91 S.Ct. 1586. As stated in *Ross,* the mere fact that indigents are at a relative disadvantage to meet judgments against them and are thereby effectively deprived of some privileges is not enough to demonstrate an equal protection violation. It would be an im-

proper discharge of our function to adopt Shultz's position and attempt to equalize the economic impact created by a judgment arising out of an automobile accident. Furthermore, Shultz's argument, taken to the extreme, would require a state which employs the less lenient approach previously in force in Pennsylvania to allow indigent individuals one "free" accident for which they are adjudged responsible. Such a request asks too much, especially given the opportunity Shultz had to use the installment payment method for acquiring reinstatement of his suspended operator's license. The record is barren of any indication that Shultz made an attempt to petition for permission to pay his debt to Mrs. Kreischer in installments. Shultz should not be able to escape responsibility for his negligent conduct merely because of his extremely limited financial resources, leaving Mrs. Kreischer to bear the full burden of his irresponsibility.

■ Shultz contends that because a license constitutes a property entitlement which cannot be terminated without procedural due process, *Bell v. Burson, supra,* it is a "fundamental interest." Such an interest can only be infringed by a state (a) if there is a compelling justification for such infringement and (b) if the infringement is of the least possible severity. Cf. *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). We agree, however, with the holding in *Ross v. Gunaris, supra,* that there is no fundamental interest in the ownership of a driver's license. We note particularly the Supreme Court's favorable treatment of compulsory automobile insurance laws. Shultz further argues that the statute is invalid as an infringement on his right to travel interstate. Certainly, the right to travel is a fundamental personal liberty, *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). However, we are not persuaded that §§ 1413 and 1414 significantly impinge on Shultz's right to travel. They only affect one mode of Shultz's potential interstate travel, i. e., in a vehicle driven by himself. Since the statute does not significantly im-

pinge upon the right to travel itself, it is not subject to the close judicial scrutiny which is required when such an impingement occurs.

■ Shultz also contends that as a direct result of depriving him of his operating privileges, he is forced to give up his job and become wholly dependent on public assistance thereby creating an impermissible burden on interstate commerce. Loss of an operator's license, Shultz argues, forecloses him from future gainful employment because of his immobility. Multiplying this situation by the number of individuals whose licenses have been suspended as a result of the challenged statute demonstrates, according to Shultz, a significant interference with interstate commerce. Shultz's argument makes a great deal of assumptions with respect to the absolute indispensability of automobile transportation to the acquisition and continued pursuit of meaningful employment. Those assumptions themselves are open to considerable debate. Statistics with respect to the percentage of individuals who use automobiles for work do not reveal how many do this out of convenience as opposed to necessity. They also do not indicate how many of those individuals must use automobiles with themselves as the drivers as opposed to being driven by others who follow the same itinerary. However, conceding Shultz the indispensability of a driver's license to gainful employment, his point remains unconvincing. It has been stipulated that the majority of the judgments which lead to suspensions under §§ 1413 and 1414 are less than $300.00. When compared to the cost of compulsory automobile insurance which, parenthetically, repeats itself on a yearly basis, Shultz's burden-on-interstate-commerce argument is undermined. Under compulsory insurance, many individuals would, according to Shultz's reasoning, become burdens on interstate commerce because they would be unable to obtain insurance as a prerequisite to the acquisition of an operating privilege and, consequently, could not become gainfully employed. Yet, as previously noted, such compulsory insurance laws have withstood constitutional attack. Since there is no convincing evidence that the alleged burden on interstate commerce created by the operation of §§ 1413 and 1414 is any greater than the analogous burden which is imposed by compulsory automobile insurance laws, we do not find an impermissible burden on interstate commerce.

■ Shultz, as a final argument, maintains that §§ 1413 and 1414 have the indirect effect of circumventing the Garnishment Limitation Provisions of the Consumer Credit Protection Act, 15 U.S.C. §§ 1671–1675, and are thus violative of the Supremacy Clause. Section 1672(c) of the Garnishment Provisions defines garnishment as "any legal or equitable procedure through which the earnings of any individual are required to be held for payment of any debt." Since there is no requirement that Shultz's wages be withheld for the payment of the judgment outstanding against him, the procedure here is not strictly a garnishment. There is no Supremacy Clause violation.

■ The consequences of being indigent in our society are not pleasant. However, until and unless a different philosophy of government is adopted by the elected representatives of the people, it is not the role of the judiciary to equalize the effect on all individuals of all of life's circumstances. The gist of many of Shultz's arguments in this case is that he is poor and he must suffer the consequences. The Court is entirely sympathetic with his plight. However, it cannot in the proper discharge of its function eliminate the differences between rich and poor and all those in between. It has a duty, of course, to protect all individuals from cruel and invidious actions taken against them by reason of their station in life. But it is not the role of the judiciary, once it is convinced that there is no illegal discrimination being worked against the indigent, nonetheless to attempt to relieve them from their plight. That must be done elsewhere.

Shultz is not entitled to declaratory or injunctive relief and an appropriate order will issue.